17 U.S. 466
 4 Wheat. 466
 4 L.Ed. 616
 ASTOR
v.
WELLS et al.
 February Term, 1819
 
 1
 APPEAL from the Circuit Court of Ohio. The bill in equity filed in this cause stated, that Arnold Henry Dorhman, in 1806, became indebted to the United States, in the sum of $6515.10, for duties upon the importation of certain goods, payable at the custom-house in the city of New York. The plaintiff, Henry Astor, became bound with Dorhman for the payment of those duties; and thereupon, Dohrman, to secure Astor, executed and delivered the mortgage deed of the 14th of August 1806, in the bill mentioned, for the 13th township, in 7th range, then lying in Jefferson county, in the state of Ohio: and Dorhman became further indebted to the plaintiff in the sum of $2700, to secure which, upon said township, he afterwards, on the 25th of August 1807, executed another mortgage deed of the same premises. Both the deeds were recorded in the county of Jefferson, on the 2d of October 1810, and in Tuscarawas, on the 21st of October 1812, which county was erected in part from Jefferson, after the execution, and before the recording therein of said deeds.
 
 
 2
 On the 26th of August 1807, the plaintiff released to Dorhman one-fourth of said township, by deed, recorded in Tuscarawas county, on the 9th of March 1813. On the 24th of October 1810, Dorhman gave the defendant Wells, a deed of trust of the three-fourths of said township, not released, to secure the payment of $5000, for which the defendant Wells had become liable for Dorhman, by indorsing his paper, at the bank of Steubenville, which was recorded in Tuscarawas, the 13th of January 1811. On the 12th of February 1813, the defendant Wells took another deed from Dorhman, for the quarter sections which had been released, which was recorded in Tuscarawas county on the 10th of March 1813, to secure $3000, for further indorsements by Wells for Dorhman. The bill then charged the defendant Wells with notice of the plaintiff's deeds and lien upon said lands, before his deeds, indorsements, or any payments made by him; and that he accepted the deeds, made the indorsements, and payments, if any, with knowledge, &c.; charged a secret understanding, that the released sections, conveyed to Wells, by the last-mentioned deed, were to inure to Dorhman or his family; and that neither transaction between Wells and Dorhman was bond fide. Dorhman died on the 21st of February 1813, nine days after his last deed to Wells, who commenced a suit against the heirs of Dorhman, on the 27th of August following; and obtained a decree of sale, under which he purchased the premises; all which was charged to be fraudulent.
 
 
 3
 The widow and heirs of Dorhman, by their answer, admitted all the deeds, and answered, generally, that they knew nothing of the other transactions. The answer of Wells admitted the plaintiff's deeds; stated his own deeds to be bon a fide, and denied notice and fraud.
 
 
 4
 Obadiah Jennings, who was examined as a witness in the cause, testified that he prepared the first deed to Wells, and saw it executed, but said that Dorhman employed him, and he considered himself exclusively employed by Dorhman, and not as the agent or attorney of Wells, in that transaction; that it was probable, he had held some conversation with Wells as to his liabilities for Dorhman, and the nature of the security to be given, before Dorhman applied to him to draw the deed; and that Wells sent the deed to him in a letter, to carry to be recorded in Tuscarawas county. Dorhman informed him, that Astor's agent had brought Astor's deeds and put them on record; and Dorhman wished to give Wells the preference, and consulted him how it could be done. The witness examined the record, and knew of Astor's deeds and lien on those lands. He advised Dorhman to give Wells a deed, which, if recorded in Tuscarawas, would give him the preference; but never gave Wells any information respecting Astor's deeds.
 
 
 5
 March 6th.
 
 
 6
 Brush, for the appellant and plaintiff, argued: 1. That the defendant's (Wells) deed was void, under the second section of the statute of Ohio, entitled an 'act for the prevention of frauds,' &c., which declares, 'that every gift, grant or conveyance of lands, tenements, hereditaments, &c., made or obtained with intent to defraud creditors of their just and lawful debts or damages, or to defraud or deceive the person or persons who shall purchase such lands, &c., shall be deemed utterly void, and of no effect.' Rev. Laws of Ohio, 321. The bill shows Astor to be a creditor; the answer admits it; and Jennings proves that Dorhman informed him such was the fact. The debt being secured by mortgage upon the lands in controversy, only makes the fraud more palpable. Still, he was and is a creditor; and it is manifest, Dorhman made the deed to Wells to defraud Astor, his creditor.
 
 
 7
 2. The recording of Astor's deeds in Jefferson county, was notice to the defendant, Wells. During all the time given for recording, the lands lay in that county; it was, therefore, the proper place for recording those deeds, and the recording afterwards must have relation to the time when and the place where they ought to have been recorded; considering the township as part of the county for that purpose. Heath v. Rose, 12 Johns. 140; 1 Johns. Cas. 85; Vin. Abr., tit. Relation, 288. And the recording ought to be considered as nunc pro tunc, yet not so as to affect any deed made and recorded prior to the making this record: and as to all subsequent, no inconvenience or injustice could be complained of, inasmuch as every purchaser would be bound to search those records for all deeds there recorded prior to the division. Using such diligence as he was bound to use, knowing the lands originally lay in that county, he would have discovered Astor's deed there recorded, before any deed made to him; and ought, therefore, to be charged with notice. To what time does the act of assembly relate, when it says the deed shall be 'recorded in the county in which such lands shall be situate?' Revised Laws of Ohio, 318. To the time of making and delivery of the deed, or to the time of recording? The latter would make the deed take effect from the recording, not from the delivery, as is the law. The case of Taylor v. McDonald's Heirs, is not analogous, as there the lands did not lie in the county where the deed was recorded; and the question was upon the effect of the deed at law.
 
 
 8
 3. By accepting the deed prepared by Jennings, the defendant, Wells, has made Jennings his agent, by legal implication; and notice to him is notice to his principal. Jennings acted in the transaction; advised Dorhman how to give Wells the preference; prepared the deed; saw it executed, and at the request of Wells carried, it to be recorded; and had some previous conversation with Wells as to his liabilities for Dorhman, and the nature of the security to be given. In Le Neve v. Le Neve, Ambl. 438, the defendant 'denied notice of the first articles and settlement, till six months after the marriage; and denied that Norton was employed as her solicitor, though she put confidence in him because he was concerned for her husband, and recommended by him, who assured her, he (Norton) would make a handsome provision for her; and Norton assured her, he had taken care to secure her an annuity of 150 a year, and did not then, or any time before, give her any notice of any former settlement.' Although the defendant here has not been as candid as the defendant was in that case, yet by his artful taciturnity and scanty pleading upon the most important subject, much is to be inferred against him. In the case of Jennings v. Moore, 2 Vern. 609, Blincorne acted the very part Jennings has in this transaction, so far as the conduct of either is material to affect the purchaser; and so far as there is any difference, it would seem, the case at bar presents much the strongest ground of equity, to set aside the subsequent incumbrancer or purchaser. Moore had completed his purchase, by paying the money; Wells had not. Blincorne was a bona fide creditor, and had an interest in the estate of Whitlatch, the vendor, and his object was, to secure an honest debt; but Wells's purchase, and the sale to him, was made to defraud and defeat a bon a fide creditor. Moore was charged, upon the naked fact of acceptance; but in this case, strong circumstances and inferences, beside that, implicate Wells. He, most undoubtedly, knew the handwriting of Jennings, his friend, and was bound to inquiry; but Jennings was careful not to mention it to him in any way! So was Blincorne, and so Norton; and the care which all have taken for the purchaser implicates him with their agency, if he will accept, they having notice, and contriving to conceal from him, is the ground of mala fides, and the foundation for the charge of notice against the purchaser. Brotherton v. Hatt, 2 Vern. 574, maintains the same principle, and is called by Lord HARDWICKE 'a clear authority.' The same scriveners were witnesses, and engrossed all the securities, and were quasi agents for all the lenders. Not that the fact of agency was otherwise established, than by the fact of accepting or receiving the securities, engrossed by the same scriveners, who had notice; the concealment of which by them, if the law could tolerate it, would make frauds practicable, without the means of detection. In the latter case above cited, it does not appear, that Mrs. Hatt, the third mortgagee, had any better knowledge who the scriveners were, than Wells in this case. If such had been the fact, that she knew who engrossed the deed for her, and such fact deemed important, it would have been noticed in the report. And it is not mentioned as a fact, or material, in the case of Le Neve v. Le Neve, where the case is cited with approbation by the Lord Chancellor; but in all these cases, they seem to have gone much upon the ground of the fraud of those third persons, and the danger of sanctioning such fraud, by deciding stricti juris, upon the mere ground of the laches of the first purchaser, in not recording his deed within the time prescribed, or not before the second deed. And although these cases profess to go upon the ground of an agency, yet it is manifest, such agency was presumed in each, and that the decision rested virtually upon the fraud which was established against persons, not concerned in interest, thereby fixing the sting of disability upon the temptation to commit fraud, by whatever motive prompted or encouraged.
 
 
 9
 4. The defendant, Wells, has not shown the time of his payment, nor denied notice at or before the same, and is, therefore, chargable with notice before his purchase was completed. Tourville v. Nash, 3 P. Wms. 307; Story v. Ld. Windsor, 2 Atk. 630. After notice, Wells ought to have compelled Dorhman to make payment, by applying the other quarter township, instead of endorsing more, and securing that also, thereby taking all hope from Astor. His conscience was affected, before the first arrangement was completed, while he had time and opportunity to save himself, and he was bound to that course.
 
 
 10
 5. The defendant has not denied notice indirectly, by implication, or notice to one whom the law will consider his agent. His answer is stiff and formal, especially, with respect to the first deed to him; careful not to say how that matter was managed; and, considering all the circumstances of this case, it must be considered as a declaration that he had no actual knowledge of Astor's deeds, not having received positive information that such were in existence.
 
 
 11
 6. Can the defendant, Wells, maintain a title, or claim the benefit of an interest, derived to him through the fraud of Dorhman and Jennings? If he can, the doctrine and principle of many cases are overturned, and we have a new law upon the subject of frauds. What is said in Le Neve v. Le Neve, Ambl. 447, is quite applicable. But in a late decision, this doctrine is fully recognised in a case like the present, though with fewer circumstances of fraud to justify its application. Hildreth v. Sands, 2 Johns, Ch. 35, and cases there cited. The cases cited to the third point are considered as applicable here; the mala fides of the actors in those cases was the ground of considering them agents by relation; the purchaser accepting his deed from polluted hands, makes their acts and knowledge his own. Sir SAMUEL ROMILLY (arguendo), in Huguenin v. Baseley, 14 Ves. 288, says, 'though no direct authority is produced, your Lordship, dispensing justice by the same rule as your predecessors, upon such a subject, not confined within the narrow limits of precedent, will, as a new relation appears, look into the principles that govern the human heart, and decide in a case far the strongest that has yet occurred upon this ground alone, from its infinite importance to community.' And the Chancellor thereupon lays down the doctrine as well established, 'that interests gained by the fraud of other persons, cannot be maintained.' It would be infinitely mischievous, if they could, and as there said, 'would be almost impossible ever to reach a case of fraud.' The genus, or kind, of fraud, seems not to be so much regarded as that such is the character of the transaction.
 
 
 12
 Doddridge, contra.—1. The registry act, and whatever other statutory regulations each sovereign society may adopt for the transfer of titles to real property, are matters of positive institution; the English registry act and statute of enrolments, however, have furnished precedents which, in one way or another, have been followed up in each state; and the decisions upon them have been so uniform, as to have become quite familiar. The attempt here to impeach a deed, innocently obtained, on the ground, that it was fraudulently intended by the grantor, is quite novel, and as dangerous as it is novel. It proceeds on the ground, that the clause in the state law is to be expounded in the disjunctive, and that 'or' is not to be expounded so as to mean 'and.' The first objection to this interpretation is, that it supposes the word 'made,' can be satisfied by the act of a vendor alone; and the word 'obtained,' in like manner, by the single act of the vendee, which is impossible. No deed can be made, without the assent of two persons, at least. Deeds take effect upon the delivery; which is never effected, without the concurrence of the person who receives. The second objection is, that it puts to hazard the interest of every purchaser; as every purchaser must depend for his security, not upon his own innocence, but upon the continual integrity of the vendor; who, if, at any time, and for any reason, he can be brought to confess his own fraudulent intentions, in answer to a bill against him and his vendee, can ruin the latter. A third and decisive objection is, that the statute of frauds, if it be susceptible of the complainant's interpretation, repeals the registry act, which is not pretended. The registry act, then in force in Ohio, provided, that all deeds executed out of the state, 'should be recorded in the county in which the lands, tenements and hereditaments, so conveyed or affected, shall be situate, within one year after the day on which such deed or conveyance was executed; and unless recorded in the manner, and within the time aforesaid, shall be deemed fraudulent against any subsequent bond fide purchaser, without knowledge of the existence of such former deed of conveyance.' Now, if the act of Dorhman, in giving his first deed to Wells, is fraudulent, as being made with intent to postpone Astor to him, and for that reason is void, then the registry act is effectually done away; because no man, under any circumstances, can make a second sale, by concealing a former one, without being guilty of as much fraud as Dorhman, at the least. His case was a hard one; he had two creditors, one of whom must suffer, and his wishes were to prefer one of them. He sought no benefit by this act to himself, nor can his conduct be as censurable as if he were selling to put money into his own pocket. If the plaintiff be right, the parties to a first and second sale stand as at the common law.
 
 
 13
 2. The doctrine of constructive notice, is entirely exploded. The term never did convey the true meaning of the courts. There is something almost absurd, in the idea of proceeding upon a question of fraud by construction. The cases upon this subject, only proceed upon two principles: first, actual notice to the party; and second, to the agent of the party. The notice arising from a suit pending; a registry or any public record, is not a matter of construction. The lis pendens, the register of record, furnish such irresistible evidence of notice in fact, that the party is not at liberty to urge the contrary; and the relief is granted on the ground of notice in fact. Nor is this an arbitrary rule: all men are parties to the public proceedings of the courts of justice, and presumed to be present at them; and also parties to every legal registry, or other public record; what the laws require to be done, and is done according to those laws, they are, in like manner, parties to, and are supposed to be acquainted with; and because the laws have provided those public documents for the security of every man, it is his fault, if he sees them not, and therefore, he is adjudged to have seen them in fact. But this reason can have no application to the proceedings of a court not of competent jurisdiction, nor to registries and records not made according to law. In respect to proceedings in courts of incompetent jurisdiction, or irregular records, they are only notice, if in fact, they have been heard or seen by the party, so as to put him upon inquiry. Sugd. on Vend. 470, and cases there cited. It is believed, that no decisions have been had upon this statute; but the statutes of Kentucky and of Pennsylvania are like that of Ohio: and in the case of Taylor v. McDonald's Heirs, 2 Bibb 420, the court in Kentucky decide, that a record made, not in the proper county, is not of itself notice. The court say, 'the law requires the deed shall be recorded, not only within the limited time, in order to be valid against a subsequent purchaser without notice, but also in the county where the land lies. This provision is obviously intended to enable persons to trace the legal title, with the industry and attention essential to a compliance with the act.' That case is stronger than is necessary for our purpose; because in that, the deed was recorded in time, but in the wrong county; and in ours, the party has failed in respect of both time and place. The case of Heister's Lessee v. Fortner, 2 Binn. 10, is an authority to the same effect; and also, that a record made within the time, and within the proper county, is void, if made upon less proof than the law requires. An illegal registry, then, is not proof of notice. Nor does the doctrine of relation apply. All the cases cited on the subject of relation prove, that the act by which a transaction is completed, has relation to the beginning; as, for instance, the presentation of a copyhold, to the surrender: but that this relation is a legal fiction, operating between the parties only, and without any effect upon third persons or their rights. But the use made of this fiction, whereby an illegal registry is made so to relate, either to the date of the execution, or proper time of registering a deed, as to affect the estate of a third person, is an invention of such modern date, as to have acquired, as yet, very little authority in this country. If the obvious policy of the law, and the authority of the decisions referred to, are satisfactory, then the case of Wells is the very strongest that can be imagined. Suppose, he had gone to the registry, to look for the record of any conveyance of the lands in question, who could suppose, he would examine the entries upon it, after the date of the separation of the counties, for a conveyance of lands in Tuscarawas?
 
 
 14
 3. It is said, that Wells does not show himself to be a complete purchaser, without notice, because he had not made full payment. The law is admitted to be as stated in respect of a purchase and sale; but the reason given for it has no application here. The reason is, that when the second purchaser receives notice of the first, he should stay his hand—refuse a deed or withhold payment; and because this is in his power, it is his moral duty to do it. But in the case of Wells it was otherwise: he was already accountable to the bank for the whole amount. This point has been determined, in a case of precisely the same nature, as to a bank indorsement. Lyle v. Ducomb, 5 Binn. 585. The rule, that notice to an agent is notice to his principal, and consequently, his fraud affects his principal, as much as if committed by himself, is not disputed. But the rule is explained and qualified, in order to give security to the party affected by it. The agent must be employed by the party—in the same transaction. Notice to the agent is not sufficient, unless acquired by him, in the course of the transaction in which he is employed; notice otherwise acquired, will not affect his principal. A general agency is not sufficient: it must be in the particular case; and the employment must be to purchase, or to make or treat of terms—not merely to draw a deed. If the agent is employed by one of the parties, notice to him shall affect that party only; where both employ him, his fraud shall attach to both. Lowther v. Carlton, 2 Atk. 139; Warwick v. Warwick, 3 Ibid. 291, 294. And it is only necessary to deny the agency and all circumstances from which fraud may be inferred, where those matters are charged in the bill. Newman v. Wallace, 2 Bro. C. C. 143. The propriety of the application of the general rule as to agents, in the cases of Brotherton v. Hatt, 2 Vern. 574; Jennings v. Moore, Ibid. 609; Le Neve v. Le Neve, Ambl. 436, has been questioned. In each of these cases, the fact of agency is charged, with all the circumstances of the transaction, from which that fact could be inferred. As those three cases contain nearly the whole law upon the subject of notice to an agent, it is only necessary to show that neither of them furnish a precedent to affect Wells. In Le Neve v. Le Neve, the agent was defendant, and he denied his agency, and admitted notice. The other only denied notice to herself; and the ground of decision is, that she admits enough in her answer to make Norton her agent. In Jennings v. Moore, one person was treating of a purchase for himself, and during the transaction received notice; and perfected the contract in the name of a third person, who accepted of it, without notice. The authority of this decision has been doubted, but with very little reason. In Brotherton v. Hatt, the agents were scriveners; they kept an office, and their profession was to drive bargains, effect loans and perfect securities. The court adjudge them to be agents, and that notice to them was notice to their principals; not because one of the parties had consulted them, and procured them merely to write a deed which another accepted. By the term 'scrivener,' something more is meant than a conveyancer. The reason for the decision is, that all the loans were effected by them, at their office, and all the securities also; and from the nature of their employment, the court decided them to be the agents of each party, in effecting the loans and the securities; but whether the court decided these facts upon proper testimony or not, is immaterial. The principle is, that notice to him who is employed by both parties to effect a loan, and prepared a security is notice to both parties. The relation of agent and principal cannot exist, without the consent of the principal. In every case cited, and in all others, the fraud is charged as it happened, either to the principal or his agent, and in the latter case, the agent is made a defendant. Agency or not, is a fact, which if stated and denied, must, like every other fact, be proved. In our case, all that is charged is denied, and no part of it is proved.
 
 
 15
 Brush, in reply, insisted, that the construction of the act of fraudulent conveyances, contended for on the part of the defendants, could not be supported. It was undoubtedly competent for the legislature to say, such instruments should be void for fraud, whether the donee or grantee be party in the fraud or not, and they have so said. Taking the entire section together, it is sensible only as it reads; but by latering 'or' to 'and' a new meaning is interpolated. The rule upon the subject is, that such construction shall be given, as will give effect to every word, if possible, that none may have been employed to no purpose. The construction, moreover, is arbitrary; contrary to a very plain text; substituting one word for another, in a law which is neither ambiguous nor doubtful; not for the purpose of suppressing fraud, and advancing the remedies, but for the purpose of restraining the operation of a remedial act. A deed, void for fraud, is not protected by the registry act, which relates only to purchasers, and never was intended to affect creditors. It has never received such a construction in the state, or elsewhere, nor will the language warrant it. Speaking of the deed of a prior purchaser, it says, 'unless recorded in a manner, and within the time aforesaid, shall be deemed fraudulent against any subsequent bond fide purchaser, without knowledge of the existence of such former deed of conveyance.' There cannot be a subsequent purchaser, unless there had been a former one. Besides, the registry act was passed in 1805; the statute of frauds and perjuries, protecting creditors against the frauds of their debtors, in 1810, five years afterwards; and must be considered as repealing so much of the former act as comes within its provisions. If it did affect creditors in any way, quoad hoc it is repealed; leaving it to operate as between purchasers, upon a first and second sale, the first not a creditor.
 
 
 16
 Another pretension set up for Wells is, that he also is, or was, a creditor and that Dorhman might prefer, which he would. If this be so, that provision in favor of creditors in the statute of frauds is defeated, as it would be in the power of a debtor to evade it at pleasure. If it be law, which we feel no disposition to controvert, that in some cases, a debtor may give one creditor a preference over another, yet this privilege no longer remained with Dorhman. He had exercised it; he had made his election to give Astor the preference, by conveying the lands to him, as it was competent for him to do, most assuredly, when it does not appear that, at that time, he owed any one else. This privilege must be exercised fairly, by giving that which is his own, not that which belongs to another, and which he may happen to hold in trust for that other. There is no law which authorizes a trustee thus to give away the trust-estate, by advancing or preferring one creditor to another. But Wells, at that time, did not stand in the relation of creditor to Dorhman. He had indorsed, but it does not appear he had paid any money, or that there would have been any necessity for him to pay, if, after express notice, he had not extended his indorsements, and involved the whole of Dorhman's estate, as if with the design which Dorhman had already manifested, of cutting Astor off altogether. As is said in Tourville v. Nash, 3 P. Wms. 307, he should have filed his bill quia timet against Dorhman, and pursued his remedy upon the other quarter township, released by Astor, and whatever other property could be found. There is nothing in the case which shows that Dorhman had received the whole $5000 before notice to Wells, nor what part he had received. It lies upon Wells to make this appear clearly, for if any part remained unpaid, it might have been stopped, and the payment enjoined.
 
 
 17
 It is said, 'if the plaintiff be right, parties to a first and second sale stand as at common law.' But this is not a case merely between purchasers at a first and second sale. To this point, the plaintiff is considered a creditor; and it stands as a case between a creditor and purchaser of the debtor. At common law, such a conveyance would be avoided. The statute of Elizabeth is in aid of the common law, extending the remedy to subsequent creditors, superadding the sanction of penalties. It declares 'deeds made in fraud of creditors void.' And although it inflicts penalties, still, in England, it is viewed as remedial, 'made against frauds, for the public good, and to be taken by equity.' Gooch's Case, 5 Co. 60 a; 1 Fonbl. Eq. 270, 282. Even if the doctrine of constructive notice were admitted to be no longer a rule of equity, still this admission would only raise a dispute upon an abstract proposition, whether the notice we rely on be actual or constructive? It is, therefore, a disagreement as to the name. Under what denomination have the law-writers classed it? is the question. If actual, then we say, Wells had actual notice. If constructive, then he had only constructive notice. We have only to show Wells had such notice as the law charges him with, to avoid the danger of sanctioning fraud, and to close the avenues of injustice, and fraudulent speculation. According to the opposite argument, a suit pending, or a registry of a deed, are notice in fact. They are facts of record, and notice to all persons in the same community; but we must be permitted to disbelieve that every person has seen them in fact, and, therefore, knows what they contain. Yet every person is bound by this knowledge, because they are made public, and accessible to all: constructive knowledge or notice, being by the law charged upon the party, because he might have known; the law having done its part by making such public record, and declaring all persons bound by it, whether they know it or not. It is a well-established principle, that the defendant must unequivocally deny all notice, even though it be not charged, and every fact and circumstance from which it can be inferred, in order to be considered a bond fide purchaser. Frost v. Beekman, 1 Johns. Ch. 302; s. c. Ibid. 566; Murray v. Finster, 2 Ibid. 155. This the defendant, Wells, has not done. The case of Taylor v. McDonald's Heirs, 2 Bibb 420, is not analogous; as there the lands never were included in the county where the deed was recorded; and the question was upon the effect of the deed at law.
 
 March 10th, 1819.
 
 18
 JOHNSON, Justice, delivered the opinion of the court.
 
 
 19
 The questions in this case are partly of law, partly of fact. The bill charges the defendant with express notice of the complainant's previous mortgage, and with holding the land purchased under a secret trust for the legal representatives of Dorhman, the mortgagor. Both these facts the answer denies; and as there is no evidence to sustain them, they must be put out of the case. The bill then proposes to affect the defendant, Wells, with constructive notice; and if it fails there, then to set aside the deed to Wells as absolutely void, under the express provision of a law of the state of Ohio.
 
 
 20
 Obadiah Jennings, who drew the mortgage from Dorhman to Wells, was fully apprised of the existence of Astor's mortgage, and acted in concert with Dorhman, expressly to defeat Astor's prior lien, and give precedence to Wells. The advantage of which they proposed to avail themselves for this purpose, was a supposed mistake committed by Astor as to the legal office for recording his deed. The land was originally comprised within the limits of Jefferson county. But before the recording of the deed, the county of Tuscarawas was taken off from Jefferson, and the land lay in that part of Jefferson which thus became Tuscarawas county. The law of Ohio requires that the recording shall take place in the county in which the land lies.
 
 
 21
 The first question is, was this a legal recording, under the laws of Ohio, so as to preserve the priority which dates gave to Astor? The office of Jefferson county was the legal office, at the time of executing the deed: did it continue to be so, at the time of recording it? This can only be decided by considering the object of the law. It was to give notice to subsequent purchasers—to place at their command the means of investigation, to which, if they did not resort, they had only to blame their own indolence or folly. But no one in search of such information respecting lands situate in Tuscarawas county, would be expected to search the records of Jefferson, subsequent to the date of the separation. He would naturally refer to the records of the new county, to its origin, and from that time pursue his inquiries among the records of the county in which it was originally comprised. And therefore, we are of opinion, that the recording of Astor's deed was not sufficient, either to preserve its legal priority, or give it the equity resulting from constructive notice.
 
 
 22
 But it is contended, that Jennings was the mutual agent of both mortgagor and mortgagee, in the creation of Wells's mortgage, and therefore, the notice to Jennings was notice to Wells. Here, again, the complainant's case is unsupported by the evidence. On the law, there could be no doubt, if the facts were such as the complainant contends. But it is positively denied, both by Wells and Jennings; and if Jennings was the agent of Dorhman only, his knowledge could produce no other effect on the rights of Wells, than if it had been concealed in the breast of Dorhman. And this leads to the final question in the case. As the deed really was 'made' to defraud Astor, does that circumstance alone, under the laws of Ohio, destroy its validity, without reference to the knowledge or connivance of the mortgagee. And this again must be decided, by referring to the object of the law. The words of the statute would literally embrace the case. But who are the objects of the law? Not creditors only, but subsequent purchasers. And to give it such a construction as would expose a bona fide purchaser, without notice, to imposition, in order to protect creditors, could never comport with the intent of the law.
 
 
 23
 Upon the whole, we are of opinion, that there is no error in the decree below, and that the same be affirmed, with costs.
 
 
 24
 Decree affirmed, with costs.