LIPSCOMB, J.
The first point presented for our consideration by the appellant’s brief, is tlie admissibility of tlie testimony' of a witness taken by interrogatories, whose residence was said to be in Bexar county, - but who *170 had left for El Paso. It is contended that his testimony being only de bene esse, it should not have been received without affidavit that the witness was without tlie limits of the county at tlie time it was offered in evidence. The objection is predicated upon the proviso to article 817, Hart. Dig. It is in the following words: “Provided, that no deposition of a witness, except when “ the witness is a female, shall be permitted to be read in evidence, unless the “party offering tlie same,-his agent, attorney, or some competent person, shall “first make oath that the witness is without the limits of the county where tlie ■“suit is pending, or that such witness is dead, or that, by reason of age, sick“ness, or official duty, such witness is unable to attend the court.”' If the literal meaning of the language of tlie statute is to be taken, without looking to tlie spirit of it, many cases might occur where it would not be possible to make the deposition of an absent witness available,' because it would not be safe for a conscientious man to swear positively to tlie fact of the witness being at the time of the trial without the limits of the county, however small and circumscribed those limits might be; and tlie uncertainty would be greatly increased where tlie county covered a great extent of unsettled territory. In this case it was proved that tlie witness might be in the county, on his way to El Paso, and be distant' from tlie place where his evidence was offered three hundred and fifty miles; and that lie might be out of fflie county, by passing to Medina county in his route, not more than the distance of thirty mill's. Such circumstances would claim a very liberal construction of tlie statute. We believe that all that .a reasonable construction of the statute requires is a reasonable presumption that tlie witness was without tlie limits of the county. It was in evidence that he had left San Antonio for El Paso about twenty-live days before, and it therefore would not be a violent presumption that he had passed beyond tlie limits of tlie county; and therefore there could be no objection to receiving his deposition in evitlonce. The question of the jurisdiction of Bexar county is not free from difficulty. This suit was commenced on the IStli of March, A.D. 1851. By an act of tlie Legislature, to take effect from its passage, approved 28th of January, 1850, the county of Kinney was created out of the territory belonging to the jurisdiction of the county of Bex-ar. The act is silent upon the subject of organization;' it only defines certain territorial boundaries which shall “oonstitute the county of Kinney,” “and that the (own of Eagle Pass shall be the county seat.” By the act of January 29th, 1850, the twelfth judicial district was created, and the county of .Kinney was included therein. This act wiis to take effect from and after tlie 1st August, 1850; and by the act of 8t.li February, 1850; tlie time of holding the District Court for the county of Kinney was(jfixed to be the first Mondays in March and September in each year. The only general act upon the subject of organization of new counties, where there is no mode pointed out by the act creating them, that we have found, is contained in tlie act of IGtli March, 1848. (Art. 925.) It is as follows: “That, in all cases where a county is not organized and there is no officer in the same authorized bylaw to organize such “ county, (.lie chief justice of tlie nearest county which is organized may order “elections for county officers in any sue!i disorganized county, and appoint “the presiding officers and managers and clerks of election, as prescribed by “law in other cases.” We have shown that ample provision has been made by legislation to organize the county of Kinney; Unit its territorial limits have been defined, and provision made for holding the District Courts, but that its organization was left to the chief justice of the nearest county. Until this organization there could be no courts of any description. The District Court could not be liolden until, by the county organization, a sheriff and a clerk had been elected. What is the condition of the citizens embraced within tlie limits defined as the boundary of the new county during the time between tlie passage of the act creating tlie county and its complete organization, as to their rights and remedies? and to what local jurisdiction are they amenable, on the one hand nud on the other, to look for the enforcement of their rights? are grave questions, presenting some difficulty, as we said at the corn- *171 meneement of our discussion on this branch of the case. We believe, however, that a satisfactory conclusion can be obtained by fixing on the point of time wlim the jurisdiction of tiie mother county, Bexar, ceased, or will cease, to exist over (lie citizens of tlio territory designed to form tiie new county. Was it from tin' date of tiie passage of tiie act of tiie Legislature creating and defining Hu; boundaries of Kinney county? We think not. If it ceased to exist at that tinie, it would be in tiie power of the Legislature to deprive a portion of the citizens, for a time, of all protection of the laws of the State, and to let crime go unpunished and lawless violence wholly unrestrained. If it were true tliat during the time between the legislative act creating a new county and its organization, it would be beyond the jurisdiction • of the old comity, those who wished to avoid contributing to the support of the Government by the payment of taxes and to obtain ini’immunity from the performance of the various public duties imposed upon the citizens, and, in line, all those whose crimes had rendered them obnoxious to law, would combine and prevent an organization, and thereby defeat the administration of the law. The Legislature never believed or intended that such would be the result where the act creating the new county was passed; and by the expression used, that it should take effect from its passage, it did not mean that the jurisdiction of Bexar county should cease, it only meant that it should so far take effect as to authorize immediate measures for organization .being taken, and authorized the chief justice of the nearest county to proceed to complete the organization. Until that; was completed, tiie jurisdiction of the mother couuty remained in full force. This is tiie result of necessity, and grows out of the principles of our Oon-titution, that guarantees to every citizen ciptalprivileges. We believe, therefore, that, the old jurisdiction remained in full force until the organization of the new one, and that the severance of the new county from the old was not completed until the organization of the new one. The jurisdiction of Bexar county continued unimpaired until the organization of Kinney county was completed.
We"can perceive no objection to the joinder of the several defendants in tills action. It; is our practico to join all who are supposed to be liable, although their liability may have accrued in different ways ; and if the evidence should not; fix the liability of one or more so joined, such defendant would be entitled-to a verdict in his favor. The jury in this case rendered a verdict against all of the defendants.
The appellants contend, that as it was in proof that tiie defendants had parted with lite wood, before tiie suit was commenced, to the United States, there was such a variance between the allegations and the proof that the plaintiff was not entitled to a recovery. The suit was brought, for the wood, and the doctrine, of tiie action of detinue must govern it. Although we do not acknowledge tiie common-law forms of action, yet, when property is sued for, the principles of law defining- and governing that aelion must he resorted to, we having adopted the common law, without its forms of action. It was once held ihat detinue could not be sustained except in cases where, tiie property had been possessed originally lawfully by the defendant, and lie unlawfully detained and held the possession; it was generally brought against a bailee for holding over. It; siib equently grew to be the rule of decision in England, and has been followed in tiie United Stab's, that this action could be sustained when the possession lias been tortiou.-ly obtained by the defendants ; that the plaintiff might waive the tort and sue for tiie property. And there is no doubt but, by till','ancient common law, that it was essential for the plaintiff to prove that the defendant was in possession of the chattel at tiie institution of tiie suit. This rule has also been changed, and a strong array of authority goes to sustain the action, if the property of the plaintiff had been in the possession of the defendant tit any time before the commencement of the suit, and all whose, hands it had passed through were liable, thus breaking down all distinction in the proof of (his action and the action of trover and conversion, and -even carrying it beyond tiie latter. In all cases, however, it is usual to allege *172 the possession in the defendant; but the proof of that possession is not confined to the time of bringing* the suit. According to these rules, the allegata and the probata are not perceived to be variant or discordant. IIow far the more modern decisions on the action of detinue are consistent with either principle or sound policy is questionable, and we do not wish it to be understood that we adopt them without modiiication. This is not considered a case in which we are called upon to say what modifications we may, at some time and in a suitable case, discuss and adopt. The finding in this case is the amount of the value of the wood sued for, and is no more than could have been recovered in an action of trover and conversion at common law. Had the suit been for property, the use of which would be valuable, and the jury had given a verdict against a purchaser for a valuable consideration without notice, for the use and also for its value, it would then have become our duty to say how far such a finding could he sustained. But, from the finding of the jury, they only gave the value of the property sued for. The judge charged the jury, at the request of the appellants, that the defendants must he in possession at the institution of the suit. If he erred in this respect, it was at the instance and on the side of the appellants, and they received no injury from it, and the verdict is as it would have been liad the charge been more in accordance with the modern rulings of the courts, because neither of the appellants stands as an innocent purchaser without notice.
Note 65. — Clark v. Goss, 12 T., 396; Cox v. Reinhardt, 41T., 591. And if the new county is organized, but not attached to any judicial district, its inhabitants can bo sued in the county to which they belonged before the creation of the new county. (Runge & Co. v. Wyatt, 25 T. Supp., 291.)
"We can see no error on the other points of law presented by the record and assigned by the appellants. Tho judgment is therefore affirmed.
Judgment affirmed.