HOWE MACHINE Co. *v.* CLAYBOURN and others.

*(Circuit Court, W. D. Michigan, S. D.   February 16, 1881.)*

1. FRAUDULENT CONVEYANCE—QUESTION OF FACT—MICHIGAN STATUTE.
   The question whether a conveyance is made with intent to defraud creditors is, in the first instance, a question of fact, under the Michigan statute.

2. SAME—RESERVATION OF SECRET BENEFIT.
   The reservation, therefore, of a secret benefit, upon the execution of an absolute conveyance, does not necessarily render such conveyance fraudulent as to creditors.

3. SAME—SAME.
   The land, however, may be charged in equity with the benefit reserved.

4. SAME—BONA FIDE PURCHASER.
   The fraudulent intent of the grantor cannot affect a *bona fide* purchaser without notice.—[ED.

In Equity.

*Albert H. Standish,* for complainant.

*Edwin Bacon,* for defendant.

WITHEY, D. J.   Defendant Thomas K. Claybourn became surety in a bond for one Abel to the plaintiff, in 1873, for $3,000.   In March, 1879, complainant obtained judgment on the bond against the makers, issued execution, and levied, May 8, 1879, upon 160 acres of land as Claybourn's.   In December, 1877, this property was conveyed by Thomas K. to his son, Wilson A. Claybourn, by warranty deed, for the expressed consideration of $4,000.   On the same day the latter executed a bond to Thomas K. and Ann Claybourn, his wife, in the penalty of $6,000, for their support during their lives.   The condition recited that a conveyance of land had been made under an agreement by Wilson A. to support his father and mother.   The wife of Thomas K. did not join in the conveyance.   The lands constituted the farm of the grantor on which he resided.   Graham is made a defendant as mortgagee, Wilson A. having executed to him a mortgage on the farm, March 1, 1878, to secure payment of $1,600, money borrowed.

The bill in this case is filed in aid of the execution, and to have the deed to Wilson A. declared void as against the creditors of Thomas K. Claybourn. The proofs show that at the time of the conveyance the personal property on the farm belonging to Thomas K. was also conveyed; and that the transfers and bond for support were in pursuance of a verbal agreement between the father and son, by which the son, in addition to supporting his father and mother, was to pay certain of the father's debts, including $1,817 of indebtedness to himself, which he was to and did surrender. Thomas K. was insolvent at the time of the conveyance to Wilson A., but the latter had no knowledge of that fact, and did not know of the liability of Thomas K. to complainant upon Abel's bond. If there had been no such indebtedness to complainant, Thomas K. had property more than sufficient to pay all of his liabilities.

The 40 acres on which Thomas K. Claybourn and his wife resided, worth $1,500, was exempt as a homestead, and as the deed was not executed by the wife of Thomas K., it was void as to such homestead. The amount of Thomas K.'s debts which Wilson A. was to pay, including those owing to himself, amounted to about $4,000, of which he paid about $2,800 prior to any notice of the existence of complainant's claim, and since then he has paid nearly all the balance.

It is manifest that Thomas K. reserved a secret benefit to himself when he conveyed his property to his son.

The deed stated the consideration received to be $4,000; but a further consideration not expressed was the support which the grantor and wife were to receive from the grantee,— a benefit reserved to the grantor, and not disclosed by the conveyance. The value of the real estate described in the deed of conveyance was $6,400, and of the personal property $160. There is, however, no testimony, save the transaction itself, tending to show that the son knew anything of any indebtedness against his father other than such as the son agreed to pay. Wilson A. Claybourn testifies that he knew

nothing of, and had not heard of, his father being surety for Abel in the bond to complainant. Complainant is entitled to reach the interest secretly reserved by Thomas K. out of the property transferred, but it does not follow that the conveyance is void in favor of creditors under the statutes of this state.

Section 4716, Compiled Laws of Michigan, declares that the question of fraudulent intent shall be deemed a question of fact and not of law. Section 4717 provides that the statute, declaring every conveyance made with intent to hinder, delay, or defraud creditors or other persons void, shall not be construed to impair the title of a purchaser for a valuable consideration, unless it shall appear that he had previous notice of the fraudulent intent of his grantor, etc. The statutes of fraud of Elizabeth have been generally construed in substantial harmony with the last provision, but quite differently from the import of the first-mentioned provision, which is not contained in the older statutes of fraud. The federal courts, under the statutes of Elizabeth, hold as a matter of legal presumption that a deed made by a debtor, which, on its face conveys absolutely, but out of which he reserves to himself some interest or benefit, is fraudulent and void; and, as the law makes the presumption, the court must determine, as a matter of legal construction, when the presumption is rebutted. *Hamilton* v. *Russell,* 1 Cranch, 309, 316.

Under the Michigan statute the question whether a conveyance is made with intent to defraud creditors is, in the first instance, a question of fact; and if a *prima facie* case, or one which raises a presumption of fraud, is made out, the question whether it is rebutted is also a question of fact. This case presents a question of the validity or invalidity of a deed of conveyance governed and controlled by the laws of the state. In a trial at law, the jury, and not the court, would have to deal with the question of fraud. Sitting in equity, the court performs the duties of court and jury. It cannot be held in this case, as in *Lukins* v. *Aird,* 6 Wall. 78,

relied upon by complainant's solicitor, that for a debtor to sell his land, convey it by deed without reservations, and yet secretly reserve to himself a benefit, is fraudulent as a conclusion of law, without reference to whether, as a matter of fact, the grantor and grantee intended to defraud creditors. It is the broad language of the court, applied to any such conveyance made by a debtor in failing circumstances, without qualification, which I do not accept or apply in this case. According to the language employed by Mr. Justice Davis it would make no difference that the grantee purchased without notice of his grantor's failing circumstances, or even that he was indebted. It has been held by that court that a conveyance will not be set aside without the element of bad faith in both the grantor and grantee. *Clements* v. *Moore*, 6 Wall. 312; *Astor* v. *Wells*, 4 Wheat. 466.

On the part of the grantor there can be no difficulty in finding his intention to have been fraudulent, either as a conclusion of law or fact in making the conveyance. . But it is difficult from the whole proofs to fix upon the grantee any want of good faith, or an intent to hinder, delay, or defraud creditors. Provision was made to pay all debts of Thomas K. of which his son had any knowledge. The fact that the value of the property transferred, or supposed to be transferred, was $2,400 in excess of the consideration stated in the deed, tends to throw suspicion on the good faith of the grantee, but, taken alone, or in connection with the other facts, it is not proof of fraud. So also the reservation by the grantor of benefits by the bond for support may be a badge of fraud; and conveying all the grantor's property is another fact that awakens suspicion; but none or all of them are necessarily evidence of fraud on the part of the grantee. If he takes title in the belief that the grantor is not indebted, or has by the transaction provided for the payment of all his debts, and has no good reason to believe otherwise, no ground is seen upon which to find fraudulent intent on the part of grantee.

The criterion by which to reach a conclusion is whether

the purpose of the grantee was to aid the grantor in perpetrating a fraud upon his creditors. Did he buy recklessly or with guilty knowledge, or, which is the same thing, with such knowledge as would put a prudent man upon inquiry? *Clements* v. *Moore, supra.* The actual secret intent of the grantor, however bad, cannot affect a *bona fide* purchaser without notice. *Astor* v. *Wells, supra; Hollister* v. *Loud,* 2 Mich. 313.

The grantor was not reputed to be insolvent. There is nothing in the proofs to show that he was put on inquiry, and all debts were understood to be arranged, and therefore there can be no presumption either of law or fact that on the grantee's part the purchase was with a fraudulent intent. I cannot, therefore, set aside the conveyance, but the land may be charged with the value of the benefit reserved by Thomas K. The statutory homestead, of the value of not more than $1,500, did not pass to Wilson A., for the reason already stated. The title to the residue of the land did vest in him, subject to dower rights. But so much of the purchase price of the land as was reserved for the support of Thomas K. and his wife, and not paid or satisfied, can be reached by complainant in this suit. In his behalf, as a creditor at the time of the transfer of the property, equity will declare a lien upon the land, subject to Graham's prior mortgage lien. The case will be referred to a master to state and report what portion of the purchase price reserved for the benefit of Thomas K. and his wife remains unpaid, and on the coming in of the report complainant will be entitled to a final decree fixing the sum and declaring the lien, with authority to sell, etc.