## WHITEHEAD v. GALLOWAY et al.

No. 4214—Opinion Filed December 21 1915.

Rehearing Denied July 18, 1916.

(153 Pac. 1101.)

**1. Deeds—Vendor and Purchaser—Registration of Title—Validity and Effect.**

Prior to the 21st day of June, 1906, the Southern judicial district of the United States Court for the Indian Territory was an organized judicial district with a judge, clerk, and other court officers and had been divided into recording districts. On that day the President approved an act of Congress creating a new recording district to be known as the Twenty-Ninth recording district, with Duncan as the place fixed for holding court and maintaining the clerk and ex officio recorder's office. Held, that the creating act of Congress ipso facto established the recording district, and that no subsequent organization was necessary, and that after that date a deed to land in that district, even before the clerk and ex officio recorder's office had been opened in the district for the transaction of business, should properly have been filed in the recorder's office at Duncan in the newly established district, and not in the office of the old district in which the land thereby conveyed had formerly been located.

**2. Same.**

A new recording district known as the Twenty-Ninth recording district was, on the 21st day of June, 1906, by an act of Congress approved on that day, created in the established and organized Southern judicial district of the United States Court for the Indian Territory out of territory formerly comprised within what was known as Twentieth recording district. A deputy clerk

and ex officio recorder was not appointed and qualified until the 30th of June of that year, and did not open his office for the transaction of business until the 7th of the following July. On the 27th of June, 1906, W. procured a deed to land then located in the newly created Twenty-Ninth district but formerly located in the old Twentieth district, and on the 28th day of June filed the same for record in the office of the ex officio recorder at Ryan in the old Twentieth recording district. Held, that such registration did not convey constructive notice for W.'s deed to subsequent purchasers of the land, for value and without notice.

(Syllabus by Wilson, C.)

Error from District Court, Carter County; S. H. Russell, Judge.

Action by James E. Whitehead against James O. Galloway and others. Judgment for the defendants, and the plaintiff brings error. Affirmed.

James E. Whitehead, pro se.

H. A. Ledbetter, for defendants in error.

Opinion by WILSON, C. Plaintiff in error commenced his action in the lower court against the defendants in error to recover possession of certain land in Carter county, Okla., alleging, substantially, in his petition that on June 27, 1906, by deed of that date, he derived his title from one Wilburn Adams, a Choctaw Indian whose restrictions on the alienation of said land had been removed; that his deed thereto had been duly and legally recorded; that since said date he has been the owner of and entitled to the possession of said land; that thereafter his grantor, Wilburn Adams, deeded said land to the defendant in error James O. Galloway; that Galloway and wife thereafter deeded the land to defendant in error Winfield S. Pressgrove, who later mortgaged it to the Travelers' Insurance Company by executing two mortgages thereon; and that one of said mortgages was afterwards assigned to the Atkinson, Warren & Henley Company. The defendants in error urged as their defense that they were purchasers of said land in good faith, for value, without notice of plaintiff's deed; that plaintiff was never in possession of said land; and that the deed on which plaintiff relies was not recorded in the Twenty-Ninth recording district of the Southern judicial district of the Indian Territory, in which said land was situated at the time he acquired his title thereto. The plaintiff, however, contended that his deed was on record in the Twentieth recording district of said judicial district, and that at the time he purchased said land and placed his deed on record the land was located in the Twentieth recording district.

The case went to trial in the lower court on an agreed statement of facts, which was, in substance, as follows:

"That the land in controversy was allotted to Wilburn Adams on the 5th day of April, 1904, as a part of his surplus allotment, and that patents were issued and recorded in compliance with law. That on December 8, 1905, the restrictions on the alienation thereof were removed by the Secretary of the Interior That on June 27, 1906, Wilburn Adams made and delivered to the plaintiff his warranty deed to said lands, and that said deed was filed for record in the office of the Twentieth recording district at Ryan, Ind. T., on the 28th day of June, 1906. That on November 16, 1906, James O. Galloway procured a deed to said land from said Wilburn Adams and his wife, and recorded the same on the 22d day of November, 1906, in the office of the Twenty-Ninth recording district at Duncan, Ind. T. That on December 24, 1906, said Galloway and his wife deeded said land to Winfield S. Pressgrove and his wife, who recorded the deed in the office of the Twenty-Ninth recording district. That afterwards said Pressgrove and his wife gave two mortgages on said land to the Travelers' Insurance Company, which later assigned one of the mortgages to the defendant in error the Atkinson, Warren & Henley Company, and that said mortgages and assignment were recorded in the Twenty-Ninth recording district. That on June 21, 1906, the President of the United States approved an act of Congress which was, as follows: 'That in addition to the places now provided by law for holding courts in the Southern judicial district of Indian Territory court shall be held in the town of Duncan, and all laws regulating the holding of the court of the Indian Territory shall be applicable to said court hereby created in said town of Duncan. That the territory next hereinafter described shall be known as recording district number twenty-nine (then describes territory within which the land in controversy is located), and the place of recording and holding court in said district shall be Duncan.' That prior to the passage of the above-mentioned act of Congress the lands involved in this action were situated in the Twentieth recording district of the Indian Territory, commonly known as the 'Ryan district,' and that said lands were included in the above-mentioned act of Congress and constituted a part of the Twenty-Ninth recording district. That on the 30th day of June, 1906, C. M. Campbell, who was then clerk of the United States Court for the Southern Judicial District of the Indian Territory, appointed and designated C. N. Jackson as deputy clerk, whose appointment was on the same day approved by the judge of said court. That on the same day he took the oath of office and filed his official bond as deputy clerk of the court. That said C. N. Jackson's appointment was the first and only appointment ever made as deputy clerk and ex officio recorder for the Twenty-Ninth recording district. That said Jackson arrived at Duncan and opened his office on the 7th day of July, 1906, and that prior to said 7th

day of July, 1906, no office had been maintained in the Twenty-Ninth recording district of the Indian Territory. That from the time said Winfield S. Pressgrove took the conveyance to said land on December 24, 1906, he has been in actual possession of the same. That if plaintiff recovers he shall be entitled to $60 a year for five years, or $300, as rents for the years plaintiff has been withheld from the possession of the land, as against the defendant Winfield S. Pressgrove."

Upon the trial of the case the court below rendered judgment for the defendants and against the plaintiff, from which judgment, and from the order of the court overruling his motion for a new trial, plaintiff appeals the case to this court.

The judgment in this case was once affirmed in an opinion by the writer hereof, but again comes up for consideration on plaintiff in error's motion for a rehearing. While we are satisfied that our conclusions reached in the former opinion were correct, yet the brief in support of that motion for a rehearing convinces us that our reasoning was, in part, faulty, and we therefore withdraw that opinion, and submit this one in lieu thereof.

The question for this court to determine is: What was the legal effect of the filing for record in the office of the ex officio recorder in the Twentieth recording district of plaintiff's deed to the land in controversy after the Twenty-Ninth recording district had been established by act of Congress but before the deputy who was to have charge of the office in that district had been appointed and the office in the new district actually opened for business; the land conveyed being located in the new district? If the plaintiff's deed was properly filed in the Twentieth (Ryan) district, the plaintiff should have recovered; but, if it should have been filed in the newly created Twenty-Ninth (Duncan) district, the judgment of the lower court was right and should be affirmed.

Plaintiff in error argues very ably in his brief that the facts of this case are analogous to those of a case where land theretofore embraced within a certain county had been conveyed after an act had been passed transferring it into a newly established county, but before the new county had been actually organized, and that, although the act creating the Twenty-Ninth recording district had been passed by Congress and approved by the President, his deed was properly filed in the recording office at Ryan in the Twentieth district, and constructive notice of his title to the land in controversy thereby given to the defendants, for the reason that the Twenty-Ninth recording district had not been organized at the time the deed was filed in the office at Ryan, by the appointment

and qualification of an ex officio recorder for such recording district and an office opened for business therein in which such deed could have been filed at the time it was in fact filed in the Ryan office in the Twentieth district.

The case sustaining plaintiff. in error's contention which is most nearly in point is that of Lumpkin v. Muncey, reported in 66 Tex. 311, 17 S. W. 732. The Texas case above referred to is not in point, however, for the reason that the establishment of the Twenty-Ninth recording district in the Southern judicial district of the Indian Territory was not the establishment of such a governmental subdivision as a county, which could not exist in fact until its governmental machinery had been created and set in operation ·by some other method than the creative ·act of the Legislature which designated the territory to be contained therein and authorized its organization.

It is a well-settled rule that, where a new county is created in whole or in part of lands originally comprised within the limits of an old county, and subsequent to the formation of a new county ·a deed is executed to lands therein which were formerly within the old county, the recording of such deed in the old county is not effective as against a subsequent purchaser, in good faith, without notice of the former deed. Astor v. Wells, 4 Wheat. 466, 4 L. Ed. 616; Green v. Green, 103 Cal. 108, 37 Pac. 188; Garrison v. Haydon, 1 J. J. Marsh, (Ky.) 222,· 19 Am. Dec. 70. It is likewise true, as contended by plaintiff, that acts of the Legislature which create new counties do no more than provide for their organization, ·and until the new county is actually organized the territory to be incorporated therein remains subject to the jurisdiction of the old county from which it was carved. O'Shea v. Twohig, 9 Tex. 336.

Plaintiff, however, fails to observe the distinction between a county and a recording district as such districts existed in the Indian Territory prior to statehood.

A "county" is a political subdivision of the state, established for the more convenient administration of the government thereof, and is invested with such powers as are necessary to be exercised for the welfare, advantage, and protection of the public within its boundaries. 7 R. C. L. tit. Counties, sec. 2. A "county" is a governmental subdivision; a quasi corporation; an intangible entity having powers. A mere statutory authorization for the organization of a county does not create a county. A county cannot exist without having first been organized. Until it has been organized it has not attained the dignity of even a quasi public cor-

poration. It is not an intangible entity. It is not a county, and that is the reason why territory authorized by legislative enactment to be carved from an existing county and a new county created therefrom remains under the jurisdiction of the mother county until its quasi municipal organization has been, in fact, effected, and that is the reason why a deed to land within such a proposed new county, executed after the Legislature has authorized its creation but before its organization as a quasi municipal subdivision of the state, must, if filed for record before the county organization is effected, be filed in the old county. Such was not the case, however, with a recording district in the Indian Territory. A recording district was not a governmental or political subdivision. It was not a quasi public corporation. It was not a political or governmental entity of any character. It had no "powers" as a county has, and no organization was necessary for the purpose for which it was established by Congress. It was simply a territorial area, the boundaries of which were established by Congress and within which certain things should or must be done, and one of the things which should have been done therein was the recording of a deed to lands located within its territorial boundaries which had been executed after such a recording district had been established by act of Congress. It was very similar to a district court judicial district in the state of Oklahoma. Such a judicial district does not have to be organized. It is not a political subdivision and has no powers. The court which sits within it has to be organized, but the district, itself, does not, for it is not a political entity of any character.

At the time the congressional act creating the Twenty-Ninth recording district (June 21, 1906, c. 3504, 34 Stat. at Large, 343) was approved by the President, the Southern judicial district of the United States Court for the Indian Territory had been created and had a judge, clerk, and other officers of the court, and had been subdivided into recording districts, and the act referred to created the new recording district and designated Duncan as the town therein at which the sessions of the federal court should be held in that district and at which the recorder should maintain his office.

The very instant the Twenty-Ninth recording district was created by act of Congress, it was, by operation of law, supplied with an officer, the clerk of the court of the Southern judicial district of the United States Court for the Indian Territory, and the act creating it designated the place at which the duties of the recorder should be performed, to wit, at Duncan, and deeds to

land therein situated which were executed after its creation should have been recorded at Duncan, because the federal statutes prescribing where such deeds should be recorded expressly said so.

Certain acts of Congress created "recording districts" in the Indian Territory, for recording purposes, in lieu of counties, and the particular act of Congress approved June 21, 1906, creating the Twenty-Ninth district, was set out in the agreed statement of facts in this case in the court below and is, in part, quoted above.

By the act of Congress of February 19, 1903, chapter 27 of Mansfield's Digest of the Statutes of Arkansas was extended in force in the Indian Territory in so far as the same was applicable and not inconsistent with the laws of Congress. Fed. Stat. Anno. vol. 10, 130, Act Feb. 19, 1903, c. 707, 32 Stat. at L. 841. Section 671 of Mansfield's Digest, in force in the Indian Territory at the time, provided that no deed should be valid as against a subsequent purchaser of the land thereby conveyed, unless the same was recorded in the county where the land was situated, unless the subsequent purchaser had notice of such deed.

The act of Congress approved June 21, 1906, defined the boundaries of recording district No. 29, and no further organization thereof was necessary. The statutes in force in the Indian Territory at that time expressly provided that deeds should be recorded in the district in which the land thereby conveyed was situated at the place of holding court (32 Stat. at Large, 841), and as at the time the plaintiff's deed to the land in controversy was executed and delivered the land was located in the Duncan district, which had been established by the act of Congress approved June 21, 1906, said deed should properly have been recorded at the Duncan office in the Twenty-Ninth recording district, and its being recorded in the Ryan office in the Twentieth recording district was not a compliance with the statute then in force governing the recording of such instruments.

Of course, the fact that the clerk of the court was delayed in providing the district with a resident deputy and ex officio recorder, and with the necessary records and quarters, was an inconvenience to the plaintiff in error, but that fact could not justify him in concluding that the district had not been organized and that the land included in his deed and in controversy in this action continued to remain a part of the Twentieth recording district.

We conclude that the act of Congress approved June 21, 1906, ipso facto created and

established the Twenty-Ninth recording district of the Southern judicial district of the United States Court for the Indian Territory; that instruments conveying the title to land within the boundaries of that district executed after that date should have been filed in the office of the recorder at Duncan; and that the act of the plaintiff in error in filing his deed to the land in controversy in the office of the recorder at Ryan in the Twentieth recording district was not such an act as conveyed to or charged the defendants in error with notice of plaintiff in error's deed to the land in controversy.

Finding no error in the case, we therefore recommend that the judgment appealed from be affirmed, and that the opinion heretofore filed in this case be withdrawn, and this opinion substituted therefor.

By the Court: It is so ordered.