## H. E. HODGSON & CO., Limited, v. ROYAL MAIL STEAM PACKET CO.

## ATLANTIC SUGAR REFINERIES, Limited, v. SAME.

District Court, S. D. New York. April 22, 1929.

Theodore L. Bailey, of New York City, for libelants.

Slayton & Jackson, of New York City (G. Noyes Slayton, of New York City, of counsel), for respondent.

THACHER, District Judge (after stating the facts as above). If the molasses and cocoanut oil were badly stowed, and came adrift because of such neglect, liability for the consequent damage to coffee and sugar with which the molasses and cocoanut oil came in contact is entirely clear. The barrels of molasses and cocoanut oil which came adrift were stowed between decks over No. 4 lower hold, in the forward part of a compartment only partially filled with cargo. The coffee injured by oil and molasses was stowed aft in the same compartment and the sugar similarly injured was stowed below the tween deck compartment in No. 4 lower hold.

The voyage was one upon which severe and stormy weather was to be anticipated. Care in securing barrels in broken stowage so as to prevent their coming adrift under stress of weather was therefore required (Frederick Luckenbach [D. C.] 15 F.(2d) 24, 1927 A. M. C. 143), and, in meeting the presumption of fault arising from shipment

in good order and delivery in bad, it was the respondent's burden to prove that the cargo was properly stowed, and that damage arose from a cause for which it was not responsible. In this the respondent failed. The chief officer whose responsibility it was to see to the stowage merely says: "All broken stowage was secured and tom'd off before leaving St. Kitts, as is customary." And: "Dunnage was used and consisted of three by three quartering and the cases of molasses and quoins." The master testified that the cargo "was thoroughly dunnaged with wood and casks were chocked off with quoins," but his testimony was not based upon personal observation. When asked to state if he knew of his own knowledge what, if any, lashings, toms, or temporary bulkheads were used to secure the cargo below deck in compartments where the space was not completely filled, the chief officer responded by referring to a previous answer which was not responsive, and the question remains unanswered by any testimony in the record. The fact disclosed by the log that the pack held for twelve hours during the worst of the storm, and then parted when the seas were beginning to abate, supports the inference of defective stowage, and it seems quite likely that these barrels came adrift because the broken stowage was not safely secured by temporary bulkheads so as to prevent the shifting of the cargo under stress of weather. However this may be, the proof of what precautions were taken to prevent the occurrence is inadequate, and the respondent has failed to show that the injury resulted from causes for which it was not responsible under the terms of the bills of lading.

To the Hodgson libel failure to comply with a notice clause contained in the bills of lading is asserted in defense. This clause reads:

"31. Notice of any claim arising under this bill of lading must be given by the consignees to the agents of the steamer at the port of destination on receipt of or failure to deliver the goods, and in any case within ten days of steamer's discharge, and the claim to be made within two months of its accrual. Otherwise all right of claim to be forfeited."

The agents for the steamer at the port of destination were also the agents for the libelant in receiving delivery of the freight. The ten-day notice was not required by the bill of lading to be in writing. Acting as the mutual agent of both parties, the agent was not required to formally communicate with itself. Each principal was chargeable with notice of whatever the common agent knew. Astor v. Wells, 4 Wheat. 466, 486, 4 L. Ed. 616. The agent understood and intended that claim should be asserted, and was active in preparing for the assertion thereof by arranging for a survey of the damage which was held. Having this knowledge and understanding, it is to be assumed that he was equally diligent in protecting the rights of the respondent, and it would be quite absurdly unjust to hold that the respondent's agent did not have notice of claim which it was its duty to assert. Formal claims were later made in writing, as required, within the two-month period. Libelant in the first suit is entitled to a decree for damage to its shipment of cocoanut oil and to its shipment of coffee.

In addition to damage to its sugar resulting from contact with molasses and cocoanut oil, claim is made in the second suit for similar damage resulting from contact with sea water. Under the terms of the bill of lading, liability for such damage is excepted, and there can be no recovery, unless the injury resulted from the unseaworthy condition of the ship. The bags in question were stowed in the No. 2 tween deck compartment. It is entirely clear that the sea had access to this compartment during a violent gale, in which considerable damage was done to the deck fittings of the vessel, including the steam pipe casings, which were torn away from the coaming of No. 2 hatch. Sea water gained access through the rivet holes of these pipe casings, which passed through the hatch coamings, and thus the 106 bags of sugar were wet. This, it appears, was the only leak which occurred in the No. 2 tween deck compartment, and I am constrained to find that all of this damage occurred during the course of the storm, none of it after the vessel left Bermuda. The description of the gale and of the other damage suffered by the vessel, as given by the master and chief officer, carries conviction that the tearing away of the pipe casing was due to no unseaworthy condition, but solely to the extraordinary power of the seas, which in their effect upon securely fastened steel pipe casing constituted an excepted peril, for the consequences of which the owners were not liable under the terms of their bill of lading.

Libelant in the second suit is accordingly entitled to recover damages to its sugar resulting from contact with molasses and cocoanut oil, but is not entitled to recover similar damages resulting from contact with sea water.

Enter interlocutory decrees accordingly, with provisions for reference to determine the amounts recoverable.