# SUPREME COURT OF TEXAS.

## AUSTIN SESSION, 1874.

### IRA J. COX v. THE STATE.

1. ERROR IN CHARGE OF COURT—WHEN NO CAUSE FOR REVERSAL.
—The failure of the court to give an instruction on the trial of a criminal cause, fully embracing all the facts necessary to constitute the offense, will not be cause for reversal, if it clearly appears from the evidence that such instruction could not have resulted in protecting any right of the accused.

2. GENERAL REPUTATION ADMISSIBLE TO PROVE COUNTY BOUNDARIES.—When the location of a county boundary is a material fact to be determined, evidence of general reputation is admissible in criminal as in civil cases.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

Cox was indicted for theft from a house situate in Bastrop county, within four hundred yards from the county line of Travis county. The article in the Code of Criminal Procedure permitting the venue to be laid in Travis when the offense was committed in Bastrop is as follows: "An offense committed on the boundary line of any two counties, or within four hundred yards thereof, may be prosecuted and punished in either county, and the indictment or information may allege the offense to have been committed in the county where it is prosecuted."

The court gave in charge the statutory definition of theft, and did not instruct the jury that the taking of per-

sonal property from the possession of one holding it for another must, to constitute theft, be a taking without the consent of the person so holding it; but no instruction was asked on that point, nor were exceptions taken to the charge as given. The evidence was, however, conclusive that the taking was without the consent either of the owner or his agent having charge of the property.

The evidence was circumstantial, and is detailed in the opinion. Verdict of guilty, from which Cox appealed.

*Evans & Cunningham*, for appellant, contended—

1. That the court did not give in charge all the law applicable to the case, and that the judgment should be reversed, citing Pas. Dig. arts. 3059, 3060; Brown *v.* The State, 23 Tex., 200.

2. That parol evidence should not have been admitted to establish by common reputation the location of the county line between Travis and Bastrop counties; that the English doctrine allowing it grew out of the fact that, as their county boundaries were not established by act of Parliament, there could be no other evidence than that of general reputation; but in the American States county boundaries were fixed by law, which, being the best evidence, should have been resorted to.

3. That the State could not allege the offense to have been committed in Travis, and prove it in Bastrop county.

4. That this court should take cognizance of errors apparent upon the face of the record, though not assigned, when the same go to the foundation of the action, and especially where the life or liberty of the citizen is involved. (Scott *v.* The State, 31 Tex., 410; Campbell *v.* Stokes, 2 Wend., 146; Palmer *v.* Lorillard, 16 Johns., 343; Harrison *v.* Nixon, 9 Pet., 503; Jones *v.* Black, 1 Tex., 529; Rankert *v.* Clow, 16 Tex., 13; Hollingsworth *v.* Holshousen, 17 Tex., 47; Wetmore *v.* Woodhouse, 10 Tex., 33; Salinas *v.* Wright, 11 Tex., 577; Earle *v.* Thomas, 14 Tex.,

583; Pettus *v.* Perry, 4 Tex., 488; Petty *v.* Cleveland, 2 Tex., 405.)

*George Clark, Attorney General,* for the State.

DEVINE, ASSOCIATE JUSTICE.—The defendant was indicted in the county of Travis; indictment charging that, on the 7th day of February, 1874, the accused, in said county and State, did then and there, in the county of Bastrop, within four hundred yards from the county line of Travis county, unlawfully and fraudulently take from the possession of R. T. Hill, "and out of the dwelling-house occupied by said Hill," certain moneys belonging to "W. H. Caldwell, without the consent of the said Hill, the person having possession of said money, and with the intent," &c., &c.

The jury found the accused guilty, as charged, and assessed his punishment at five years' imprisonment in the penitentiary.

The defendant's motion for a new trial was overruled, notice of appeal given, and the case is presented for revision on the following assignments of error: "That the court erred in not instructing the jury that the taking of personal property from the possession of one holding it for another must be a taking without the consent of the person so holding it." The charge of the court in this respect might have been fuller. The omission in this case is, however, not material; it was not absolutely necessary for the protection of any right which the accused might have. The evidence of W. H. Caldwell, the owner of the money charged to have been stolen, and of R. T. Hill, in whose possession it was at the time of the theft, is positive on this point; both witnesses state they did not give their consent, and the defendant made no proof contradictory of this evidence.

The second assignment, " that the court erred in in-

structing the jury that general reputation of the location of the county line is evidence of such location," suggests no real error.

Mr. Greenleaf, in his treatise on Evidence, vol. 1, p. 152, states the rule as follows: "In matters of public interest all persons must be presumed conversant, on the principle that individuals are presumed to be conversant in their own affairs; and as common rights are naturally talked of in the community, what is thus dropped in conversation may be presumed to be true. It is the prevailing current of assertion that is resorted to as evidence, for it is to this that every member of the community is supposed to be privy and to contribute his share. Evidence of common reputation is, therefore, received in regard to public facts, * * * on ground somewhat similar to that on which public documents not judicial are admitted, namely, the interest which all have in their truth, and the consequent probability that they are true."

Appellants in their brief contend that the English rule as to common report, or traditionary evidence in proving boundaries, and, as in this case, the boundary line between the counties of Bastrop and Travis, "being handed down by tradition from generation to generation," was allowed "in accordance with the well-known principle of the law of evidence, that it was the best evidence the nature of the case admitted of;" but that "this doctrine is not applicable to this country, especially to the newest of the American States." In Noyes *v.* Ward, 19 Conn. Rep., p. 268, in an action of trespass *vi et armis,* where defendant assaulted "the city highway surveyor," for interference with the land of defendant, the court held that such evidence, to show a moving in of defendant's fences twenty-one years before, was proper, and say, "Proof of general reputation was admissible in this case for the purpose of showing the existence and extent of the highway in question."

In Boardman *et al. v.* The Lessees of Reed and Ford, 6

Peters, 328, Justice McLane, in delivering the opinion, says: "That boundaries may be proved by hearsay testimony is a rule well settled, and the necessity or propriety of which is not even questioned." "Landmarks are frequently found of perishable materials, which pass away with the generation in which they are made; by the improvement of the country, and from other causes, they are often destroyed. It is therefore important in many cases that hearsay or reputation should be received to establish ancient boundaries."

In Ralston v. Miller, 3 Rand., (Va. Rep.,) p. 44, the question grew out of the location of a building on the corner of a street in the city of Richmond, and the controversy was whether ancient use, and general reputation of that use or occupation, should on the trial outweigh the depositions and survey of a surveyor as to the true line. The court said "that ancient reputation and possession were entitled to infinitely more respect in deciding on the boundaries of the lots than any experimental surveys." In the American notes to 1 Phillips & Arnold on Evidence, from page 220 to 227, the citations from decisions of the courts of New Hampshire, Massachusetts, Connecticut, New York, Pennsylvania, Maryland, Virginia, North and South Carolina, Tennessee, and other States show that evidence of hearsay or general reputation to prove boundary lines has been extended quite as far in those States as in the English courts.

Mr. Greenleaf, in his work on Evidence, in a foot-note, pages 167 and 168, says: "The admission of traditionary evidence in cases of boundary occurs more frequently in the United States than in England," and that "the general practice in this country in the admission of traditionary evidence as to boundaries seems to agree with the common law, as stated in the text."

The boundary lines of Travis and Bastrop were shown by the evidence to be less than four hundred yards from

the house from which the money was charged to have
been stolen.   The testimony of R. T. Hill on this point is
as follows: "From where common report in the neigh-
borhood says that the line between Travis and Bastrop
counties is, is two hundred and fifty yards from my house,
from which the money was taken; I have stepped the dis-
tance." This line had been in existence nearly twenty-
eight years, and acknowledged as the dividing line.   There
is nothing in the cross-examination of this witness, neither
is there any evidence in the statement of facts, that either
weakens or contradicts the evidence for the State on the
question of the county line.

The 3d assignment of error, "that the court erred in
not granting a new trial, and in overruling the defendant's
motion for a new trial," is based on the grounds set out in
the motion for a new trial, which are as follows: "The
verdict of the jury is contrary to the law as given in the
charge of the court.   The verdict of the jury is contrary
to the evidence as adduced on the trial of this cause.   The
verdict of the jury in assessing the punishment of defend-
ant at five years in the penitentiary is cruel and excessive."

The first ground for a new trial it is not necessary to
consider.   The second, that the verdict of the jury is con-
trary to the evidence, does not appear to be borne out by
an examination of the statement of facts in the record.

The defendant was indicted for stealing from the dwell-
ing-house and possession of R. T. Hill, and without his con-
sent, one hundred and sixty dollars, the property of him, I.
C. Caldwell.   The uncontradicted evidence of the witness
proved that the money was in the trunk, and it locked, when
the white family went to church in the morning; on their
return, in the evening, Mr. Hill, the owner of the trunk,
unlocked it, and missed the one hundred and sixty dollars,
mostly in silver, of Caldwell's, and one hundred and forty
dollars in gold and twenty in silver belonging to himself.
The witness, Caldwell, learning that defendant had been

there, started next morning, traced the accused to Web-berville, and there learned from the ferryman that the accused had crossed the river at the ferry the evening before.  Witness went on to the railroad, learned that he had gone down on the last train, followed down and ar-rested defendant at Hempstead, in Austin county; carried him to this city, and delivered him to the sheriff of Travis county.  The accused had on his person when arrested two hundred and ninety-three dollars and forty-five cents, ($293 45,) chiefly gold, and among the keys found in his possession at the time of his arrest was one which unlocked the door of Mr. Hill's house.  The evidence showed fur-ther, that he had been in the employ of Mr. Hill a short time; that he told Hill he had no money; that he received his wages from time to time in small sums; that when dis-charged there was coming to him on his wages only the trifling sum of five dollars and twenty-five cents.  The negro woman, Betty, testified that, having gone from the kitchen to her house while the white family were absent at church, she found the defendant changing a portion of his clothing; that he accompanied her to the kitchen, and had something to eat; that she was in the kitchen when he came to her house; how long defendant was there be-fore she saw him witness could not tell; he walked about the yard; witness saw him off and on about every ten min-utes; did not see him go into Mr. Hill's house; he stayed there about an hour; she saw him when he left the prem-ises.  This witness stated that defendant told her on the day referred to " that he was going to Austin to gamble; that he had in his life won money at playing cards, and that he intended to try it again."  Witness had frequently seen the keys found on the person of the accused; they belonged to him.  Defendant told her that the door-key (which unlocked the door of Hill's house) belonged to his father's door, and was one that he had before he left his father's house.  This witness stated " there were three

families of colored people living on the premises outside of the yard palings," and within a few hundred yards of Mr. Hill's house there were as many as twenty or twenty-five colored people living." She further stated that two colored men came into the yard that day, and it was customary for them to do so. This embraces all the material facts in the case, and, taking them in their regular and necessary order, they form the links of an unbroken chain of evidence that encircles the defendant, and from which he has not attempted to escape by explanation or opposing evidence; and from the ability and interest displayed in his behalf by his counsel it is reasonable to presume that if evidence existed it would have been produced, or an effort made to obtain it.

It is true, as stated in the brief, that some other person residing in the immediate neighborhood may or might have taken the money; but applying to the evidence in this case the tests which men apply when endeavoring to form a final judgment on any of the important transactions of ordinary life, every conclusion must be that the defendant was guilty as charged in the indictment.

The evidence shows him to have been well acquainted with the premises. Among the keys found on his person is one which unlocked the door of the house; the explanation is that it belonged (from his statement) to his father, and was the door-key of his father's house. What reason there was for his carrying this key with him while in the employment of R. T. Hill, and why he carried it away to Hempstead, is not shown. It could not be for its value, and it certainly was not for legitimate use. On the day of the theft he makes his visit to the house or premises of Mr. Hill. And for what purpose did he remain and loiter around the yard for an hour? Here he is found with a key to open the door in his possession, and evidently staying there to find an opportunity to do so unobserved. The trunk containing the money is in the room, and the key to

unlock the trunk hanging with a bunch of household keys in the room in their usual place. On that day the money, about three hundred and twenty dollars, in gold and silver, is stolen from the trunk. Defendant told the witness Betty on that day that he was going to Austin; yet he crosses the river that evening at Webberville, takes the train going down instead of up the country, and is arrested at Hempstead. Upon his person is found two hundred and ninety-three dollars and forty-five cents, ($293 45,) principally in gold, being about the amount stolen, after deducting traveling expenses, &c., &c. The question may be asked, where did he obtain this amount; was it by honest industry, or gaming during a week or two, or at any time previous to his arrest? He does not account nor attempt even to account for it, and his own statements show he had no money when in Hill's employ or when he left, save $5 25. Taking, then, all these facts—his knowledge of the premises; his visit there during the absence of the family; his loitering around the house during an hour, to the cook's knowledge, and how long before she found him in her house she does not know; his telling her he was going to Austin, and his leaving the neighborhood, passing through Bastrop and Washington counties, and arrested at Hempstead, in the direction opposite to that he stated he was going; among his keys one found that unlocked the door of the house from which the money was stolen, the key not belonging to him, and the only fact connected with its possession that he told the witness it belonged to his father's house; without funds when he was discharged by Mr. Hill, and the day after the theft with two hundred and ninety-three dollars and forty-five cents ($293 45) in his possession, a sum nearly equal to the amount stolen— against these facts not one word of evidence was offered to break or weaken their force against him.

All the facts and circumstances of this case, when taken together, were sufficient to lead the mind of the jury to

the deliberate conclusion that the accused, and no other person, committed the offense charged. There was therefore no error in refusing a new trial.

That the verdict is cruel and excessive in assessing the punishment at five years in the penitentiary is not apparent. The jury had the exclusive power to determine the amount of his punishment within the periods declared in the Penal Code; having done so, it is not a matter of revision.

The judgment is           ·       Affirmed.