43   643
29a  153
43   643
30a  55

HENRY SMITH v. THE STATE.

1. INDICTMENT—MURDER.—Though an indictment for murder must state in what portion of the body the injury was inflicted which resulted in death, it is not necessary that it should describe the wound by its length, breadth, or depth.
2. PROFESSIONAL WITNESSES—EVIDENCE.—It is competent for the State to show, on a trial for murder, the cause of the death without the aid of professional witnesses in a case where death did not ensue immediately after the infliction of a wound.
3. EXPRESS MALICE.—See statement of the case for facts which authorized a conviction of murder in the first degree.

APPEAL from Anderson. Tried below before the Hon. J. L. Camp.

On a night in April, 1875, about eleven o'clock, Henry Smith, a colored man, went to the house of Rhoda Wills, and

three times called Amanda Killy, who, with Rhoda Wills
and George Bullard, (all colored,) were in the house. It was
testified that at the same time Smith said to Amanda he
would beat her brains out if she did not come out; that
he then broke open the door and entered the room, in which,
according to the witness, there was no light; he then told
Amanda to "get up," and walking to the fireplace, seized a
persimmon club, which was three feet long and about the size
of the arm of one witness. With this weapon he "started to
strike" Amanda, but on her saying "Henry, do not strike
me with that stick; you will kill me," desisted; Smith
then ordered Amanda to leave the room, which she did;
then turning to George Bullard, who was lying on a pal-
let, he struck him one blow on the head, saying as he
did so, "You g—d d—d son of a b—h." Henry Bullard
died about nine o'clock the next day. It was shown that
about three weeks before this the accused and deceased
had a difficulty, in which the former said to the latter he
"would make the buzzards pick his bones." One witness,
who was in an adjoining room, went to the scene of the
difficulty, and kindled a light after Smith had left. Blood
was running from the mouth of Bullard, and in answer
to an inquiry as to who had hurt him he said that it was
Henry Smith. The morning after the blow was struck, the
deceased said his "brains were addled," and also, "May
God have mercy on the man who struck me." After strik-
ing the blow, Smith threatened to kill Rhoda Wills if she
reported him, and gave as his reason for striking Bullard
that Bullard had threatened on some former occasion to
report Smith for creating a disturbance. It seems that
Smith followed Amanda Killy to her home which was
near, and while there informed her that he owed Bullard
a lick, and now he had paid him. No physician testified
as to the cause of the death. One negro said the "skin
looked green" where the hair was clipped from the head
of Bullard; and another testified, "I am satisfied that lick

was the cause of the death of deceased." The jury found the defendant guilty and assessed his punishment at death.

A motion in arrest of judgment, which was overruled, was heard on alleged defects in the indictment, the character of which are stated in the opinion. A motion for new trial, which alleged that the verdict was contrary to the law and evidence, being overruled, the prisoner appealed. There is nothing in the charge of the court requiring notice.

*T. T. Gammage,* for appellant, contended that the indictment did not sufficiently describe the character of the wound, citing Wharton's Precedents, pp. 51, 73; Am. L. of Homicide, p. 321; 18 Tex., 632; 16 Tex., 206; 13 Tex., 568; State *v.* Daugherty, 30 Tex., 360; and Wall *v.* State, 18 Tex., 693.

Also, that there was no sufficient evidence of express malice, citing Ake *v.* The State, 30 Tex., 466; McCoy *v.* The State, 25 Tex., 33. Also, that as there was no physician examined in regard to the character or extent of injury inflicted by the blow given, there was no convincing evidence that it was the immediate cause of the death.

*A. J. Peeler, Assistant Attorney General,* for the State, cited 1 Paschal's Dig., art. 1490, and 31 Tex., 492.

Reeves, Associate Justice.—This is an appeal by Henry Smith from a judgment of conviction for the murder of George Bullard. The jury found the defendant guilty of murder in the first degree and assessed the penalty of death. There was a motion in arrest of the judgment and motion for a new trial, both of which motions were overruled, and the defendant gave notice of an appeal. The motion in arrest of judgment is based on two grounds—

1. Because the indictment charges the defendant with no offense greater than a misdemeanor, if with any offense at all.

2. Because the indictment charges the defendant with no offense known to the penal laws of the State.

The only ground of the motion for a new trial is, that the verdict was contrary to the law and the testimony.

The indictment charges, in substance, that Henry Smith, at the time and place stated in the indictment, made an assault on George Bullard, striking him a blow on the head with a large persimmon stick, a deadly weapon, inflicting a wound of which he died the next day, and charging that it was done willfully, feloniously, and with malice aforethought.

It is urged in the brief of counsel for appellant that a description of the wound, its nature, and position, should be set forth in the indictment.

The indictment must state in what part of the body the injury was inflicted, but it is not necessary to describe it by its length, breadth, and depth, though it was usually done in the common-law form of an indictment for murder where the wound could be described. Formerly, when it was the practice to describe the wound, a distinction was made between a bruise and an incised wound. Where the death was caused by a bruise, a description of the wound was not necessary. (Whart. Am. Cr. Law, sec. 1069.)

Before the passage of the English statute, which dispensed with the necessity of setting forth in the indictment the manner or the means by which the death of the deceased was caused, it was held that the length, breadth, and depth of the wound need not be stated. (Moseley's and Turner's Cases, 2 Arch. Cr. Plead., 207, and notes.)

Article 395 of the Code of Procedure, prescribing the requisites of a good indictment, requires nothing more in stating the offense than that it must be set forth in plain intelligible words.

The indictment in this case shows that the wound was inflicted on the head of the deceased, and describes the in-

strument with which it was done, and how it was done, and no further description of the injury was necessary.

It is further insisted that a new trial should have been granted for the reason stated in appellant's motion.

In support of the motion for a new trial it is said that no physician was called in to see the deceased; that no *post mortem* examination was made, and that there was no inquest over the body. It does not appear from the evidence whether these measures were taken or not.

On questions of science and skill, experts on the particular subject are permitted to give their opinions to the jury. The opinions of medical men are received in evidence as to the cause of disease, or of death, or of the consequences of wounds, and in some instances a jury would not be able to make a proper investigation without such evidence. For example, where a dead body has been found and identified, but the cause of the death being unknown, this is attempted to be proved by circumstantial or presumptive evidence. In such a case physicians, examined as experts, may express their opinions as to the cause of the death, drawn from an examination of the body and from external appearances as a basis for the inference that the death was caused by violence and was not the result of natural causes, as disease, sudden illness, or of accident. Evidence of this kind is admitted as necessary to aid the jury in coming to a correct conclusion in their verdict. (1 Starkie on Ev., 68, 69; 1 Greenleaf's Ev., sec. 440; Burrill on Cir. Ev., 119, 683.)

In the present case the cause of the death was shown without the aid of professional witnesses or aid of indirect evidence. The *corpus delicti* was established by the witnesses who were present at the time the mortal blow was given. The identity of the deceased as the person charged to have been slain was not questioned. The instrument with which the act was done, and the identity of the defend-

ant as the guilty agent who struck the blow, were not the subjects of controversy in the defense.

Rody Wells or Rody Wills, a witness for the State, testified on the trial that she saw the defendant strike George Bullard, the deceased, on the head with a persimmon stick while the deceased was lying on a pallet before the fire; that the blow was struck about eleven o'clock at night on the 9th of April, 1875, and that Bullard died about nine o'clock the next night at the house of Amanda Perry. The stick is described as being about the size of the witness's arm and about three feet long, with a club at one end, and as being a large seasoned stick.

Amanda Perry, who was present, said she heard the blow when deceased was struck just as she got outside of the door, and heard some one groan, and that she also heard the defendant say he owed the deceased a lick and that now he had paid him. This was said at the house of the witness on the night the assault was made, and soon after the occurrence. This witness further testified that she heard George Bullard say the next day that his brain was addled, and also heard him say, "May God help the man who struck me."

Bob Wills testified that he was in an adjoining room, and that he heard the blow, and that the deceased said, in answer to his question, that the defendant struck him on the head. This witness testified that he was satisfied that the lick caused the death of Bullard.

Peter Brinston heard the defendant say, "I knocked a man in the head out here." This witness stated that the blood was running out of the mouth of the deceased when he saw him after he was killed.

It is further urged in behalf of appellant that it was not shown that the homicide was committed with express malice or that it was of a higher grade than murder of the second degree, if the killing amounted to more than manslaughter.

. It appears from the evidence that George Bullard, the deceased, with Amanda Perry and Bob Wills, was at the house of Rody Wells or Rody Wills on the night of the homicide.   It was shown that Amanda Perry lived about one hundred yards from the residence of Rody Wills.   It was not proved where the deceased or the defendant resided, or what relation, if any, existed between either of them and Amanda Perry.

A relation is suggested in the brief of counsel, but the evidence is silent on the subject.   For some reason not explained, and certainly without any authority so far as can be known from the record, the defendant went to the house of Rody Wills, where these parties were, and after calling " Manda," three times, and no one answering, as may be inferred, he broke open the door and told Manda to get up.   He then walked to the fire-place and got the stick or club, and, as the witnesses say, started to strike Manda, but which was not done, and after ordering her to leave the house, he turned upon the deceased, who, as previously stated, was lying on the pallet before the fire, and with the club in his hand dealt the fatal stroke and slew his victim, who was unarmed, and made no resistance.

The evidence shows that the defendant made the attack under circumstances of undue advantage and without justification or legal excuse.   It was not a case where the parties attack each other upon equal terms and afterwards in the course of fight one of them in his passion snatches up a deadly weapon and kills the other with it.   This is manslaughter, the other is murder.   (Wharton's Am. Cr. Law, sec. 988.)

There was evidence of express malice.   It was proved that the defendant and the deceased had a difficulty about three weeks before the homicide, when the defendant told the deceased that he, defendant, would make the buzzards pick his bones.   On the night of the assault, and soon after it took place, the defendant was heard to say by one of the

witnesses, "I hit him a lick for threatening to report me for creating a disturbance; and I gave it to him, too." The assault was made at a late hour of the night. The door of the house was broken open and the dwelling was entered without the consent of the owner, and under circumstances evincing a lawless and reckless spirit. If the defendant's only object was to see the woman Amanda, that object was accomplished when he had found her, and when she was in the act of leaving the premises at his bidding.

We have found nothing in the record to support the argument that appellant has not had a fair and impartial trial.

The district judge having the witnesses before him, and hearing them testify, had the means of forming an opinion as to the merits of the defense and the manner in which it was conducted, which this court has not other than that contained in the record.

No sufficient reason, we think, has been shown for reversing the action of the court or that of the jury, and the judgment must therefore be affirmed.

AFFIRMED.