## William Nelson v. The State.

1. Murder—Indictment.—Though it is necessary that an indictment for murder shall charge the fatal wound to have been inflicted on some portion of the person of the deceased, yet it is not necessary that the proof shall locate the fatal wound in conformity with the charge in the indictment. This is an exception to the general rule that the *allegata* and the *probata* must correspond.

2. Same—Variance.—If an indictment charge the wound as on the right side, for instance, and it be proved to be on the left, the variance is not material.

3. Continuance in Capital Cases.—Though an application for a continuance of a capital case fail to comply strictly with the requirements of the statute, yet, if its allegations be such as would be likely, if proved, to have a material bearing on the result of the trial, it should strongly commend itself to the discretion with which the district courts are invested in the allowance of continuances.

4. Same—Practice on Appeal.—Refusal of a continuance by the court below is not revisable in this court, even in capital cases, unless a bill of exceptions, duly reserved, be brought up in the transcript.

5. Jurisdiction—New County.—By the act of March 13, 1874, a new county was created out of a part of Bexar territory previously within the judicial

jurisdiction of Bexar county; and, by an act of April 28, 1874, the new county was, for judicial purposes, attached to El Paso county. *Held* that, since this last-mentioned act, offenses committed within the area thus created a new county, although committed while it pertained to the county of Bexar, have been indictable and triable in El Paso county, and not in the county of Bexar. Nevertheless it seems that an indictment in El Paso county should lay the venue of such an offense in accordance with the fact at the time of its commission.

6. COUNTY BOUNDARIES—EVIDENCE.—General reputation is admissible to prove the boundaries of a county.

APPEAL from the District Court of Bexar. Tried below before the Hon. JAMES A. WARE.

In view of the rulings of the court, the facts of the case are sufficiently stated in its opinion.

*C. K. Breneman*, for the appellant.

*A. J. Peeler*, Assistant Attorney General, for the State.

WHITE, J. On the 15th day of June, 1875, appellant was indicted, in the district court of Bexar county, for the murder of one James H. C. Banks. The evidence shows the killing to have taken place at Fort Concho, on the morning of the 25th day of February, 1874.

On the 20th day of July, 1875, after defendant's application for a continuance had been overruled, he was regularly arraigned and tried, upon his plea of not guilty, in Bexar county. The result of the trial was a conviction for murder, and the punishment was assessed at imprisonment for life in the state penitentiary.

Before proceeding to notice the assignment of errors, we propose to call attention to that portion of the charge contained in the indictment which is as follows, viz. : that he " then and there unlawfully, willfully, wickedly, feloniously, and of his express malice aforethought, did strike, penetrate, and wound him, the said James H. C. Banks, in and upon *the left side* of him, the said James H. C. Banks, then and

there with the leaden bullets aforesaid, so shot off and dis-- charged as aforesaid, from the gun as aforesaid, by the said William Nelson, in and upon *the left side* of the said James. H. C. Banks, one mortal wound of the depth of eight inches, and of the breadth of one inch ; of which mortal wound he,. the said James H. C. Banks, then and there instantly died.''

The proof was that, instead of *in the left*, the wound was. inflicted upon *the right, side* of the body, and the 3d instruction asked by defendant, and refused by the court,. was in these words : '' The jury must be satisfied from the evidence that the deceased met his death by a gun-shot. wound in and upon *the left side* of his body, as charged in the indictment. If from the evidence it appears to the satisfaction of the jury that the wound was upon *the right* *side* of the body, your verdict must be not guilty.''

The ruling of the court in refusing to give this instruction was correct. For though, in an indictment for murder, it. is not necessary that the mortal wound should be described by its length, breadth, or depth, yet it has always been held that the indictment must state in what portion of the body the injury was inflicted which resulted in death. *Smith* v. *The State*, 43 Texas, 643 ; Whart. on Hom., sec. 824. And yet, while this is required to be distinctly pleaded, it is no longer a question as to the character of proof sufficient to sustain the allegation. It is an exceptional plea where the *allegata* as to the particular locality, and the proof adduced on the trial, are not required to meet and correspond. On the other hand the rule is that, '' if the wound be stated to be on the right side, and be proven to be on the left, and *eo converso*, the variance is not fatal. Whart. on Hom., sec. 834 ; Archb. Cr. Pr. (Waterman's notes), 7th ed. p. 888 ; 2 Hale, 186 ; *Dias* v. *The State*, 7 Blackf. (Ind.) 20.

There are but two grounds of error assigned in the record :

1st. The overruling of defendant's application for a continuance.

2d. That the court had no jurisdiction of the case.

The application for a continuance presented, upon its face, facts which, if proved, were undoubtedly of material importance to the defense. In cases involving the life of a human being, even if the application does not come up to the strict letter or substance of the statutory requirements (Pasc. Dig., Art. 2987)—in which case the continuance in the first is always a matter of right (*Dinkens* v. *The State*, 42 Texas, 250)—still, when the facts set forth are of such a character as would be likely to have serious bearing upon the result, the application appeals most strongly " *in favorem vitæ*," to the discretion with which the court is independently empowered.

It is unnecessary for us to pass upon the sufficiency of the application in this case, for, even if we should be of opinion that the application complies strictly with every requirement of the statute, we are deprived of the power to revise the action of the court in its refusal, from the failure of the defendant to save a bill of exceptions to the ruling of the court. The former decisions of our courts, from the earliest days down to the present, make the saving of a bill of exceptions a prerequisite and *sine qua non* to revisory action by the appellate court. Nor is the failure to do so remedied (as in this case) by incorporating the action of the lower court in the judgment rendered. Among the many authorities, the following are cited, viz.: *Campion* v. *Angier*, 16 Texas, 93; *Parker* v. *McKelvain*, 17 Texas, 159; *Cotton* v. *The State*, 32 Texas, 640; *Bowman* v. *The State*, 40 Texas, 8; *Jones* v. *The State*, 40 Texas, 188; *Townsend* v. *The State*, 41 Texas, 134; *Anderson* v. *The State*, 42 Texas, 390; and *The State* v. *Williamson*, 43 Texas, 500.

We are of opinion that the question raised by the 2d assignment of errors renders it necessary that we should, reverse the case. The error complained of is want of juris-- diction of the court, and the grounds are fully set forth,, both in the motion for the new trial and in the motion in arrest of judgment. In the motion in arrest of judgment they are thus expressed : " 2d. This court had no jurisdic-- tion, and ought not to take cognizance of the offense set out in the indictment herein, for the reason that, by act of the legislature of Texas, approved March 13, 1874, a new county, to wit, the county of Tom Green, was created out. of the territory which included the place wherein the defendant committed the offense charged in the indictment herein, and that the place wherein the said offense is alleged: to have been committed by the said defendant is embraced. within the limits of the said county of Tom Green."

A reference to the dates in the record, and to the evidence, will show that the homicide was committed at Fort Concho, on the 23d day of February, 1874. At that time Fort Concho was within, and comprised a portion of, the territo- rial limits of Bexar county. The act creating the county of. Tom Green was approved March the 13th, 1874. See Gen. Laws, fourteenth legislature, pp. 21, 22. By another. act of the fourteenth legislature, approved 28th of April,. 1874 (Gen. Laws, p. 155), the county of Tom Green was. attached to the twenty-fifth judicial district, and the 2d sec-- tion of this latter act provides that " the counties of Presidio,. Pecos, and Tom Green shall be attached to the county of. El Paso, for judicial purposes, until organized." By act of the fourteenth legislature, second session, approved the 15th. of February, 1875, further provision was made for the com-- pletion of the organization of Tom Green county, and the- qualification of the officers therein elected. Gen. Laws, p. 11. This comprises the extent of the legislation had upon, the subject.

Now, on the 15th day of June, 1875, when this indict-
ment was returned into the district court of Bexar county,
and on the 20th day of July, 1875, when the case was tried
in Bexar county, did said court have jurisdiction to hear and
determine the case? Our opinion is that it did not; and
this opinion, we think, is fully warranted and sustained by
reference to the authorities.

Mr. Wharton lays down the rule thus: "The venue
must correspond with the jurisdiction of the court. When
an offense is committed in the county of A, and, after the
commission of the offense, the county is divided, and the
part of the county in which the offense was committed is
erected into a new county, called B, the latter county has
jurisdiction over the offense. In such case, however, the
indictment properly charges its perpetration in the former
county, while the trial is in the latter." Whart. Am. Cr.
Law, sec. 277. See, also, *The State* v. *Jones*, 4 Halst.
(N. J.) 357, and *Jordan* v. *The State*, 22 Geo. 545.

Our own supreme court has had occasion to pass upon
similar questions in civil cases; and in *O'Shea* v. *Twohig*,
9 Texas, 336, and *Clark* v. *Goss*, 12 Texas, 395, they held
that, until the new county was actually organized by the
election and qualification of the necessary officers, the old
has jurisdiction. In *Runge* v. *Wyatt* the court say: "The
county of Wilson had not been attached to any judicial dis-
trict in the state. We must conclude, therefore, that it
was the intention of the legislature that the inhabitants of
the new county should, for judicial purposes, remain under
the jurisdiction of the mother county of Bexar until pro-
vision should be made by law for the organization of a court
of general jurisdiction in the new county." 25 Texas
Supp. 291.

In the case we have under consideration we are not left
in doubt as to the intention of the legislature. We not
only have the fact of the creation of the county of Tom

Green, but the further fact, established by the expressed legislative intent, that, until organized, it should be attached, for judicial purposes, to El Paso county. In other words, the legislature, by its positive enactments, separated the county of Tom Green, which it created out of the territory of Bexar, from the territorial limits and claim of Bexar; and it separated it from the judicial control of Bexar by giving El Paso judicial control over it until it was itself organized and its autonomy perfected thereby.

How, then, and by what authority, could Bexar county have or exercise jurisdiction legitimately over it, or the crimes or offenses therein committed?

There is no doubt, as shown from the evidence adduced, that Fort Concho was, when the indictment was presented and the trial had, inside the boundaries of Tom Green county. General reputation is admissible to prove county boundaries. *Cox* v. *The State,* 41 Texas, 1. The facts are, however, positively stated in the testimony of Dr. Buchanan, a witness in the case.

For the reason, then, that it appears from the record that the district court of Bexar county had no jurisdiction to entertain, hear, or try the case, the judgment of the lower court is reversed, and the case is remanded.

*Reversed and remanded.*