## ALVIN WILKERSON *v.* THE STATE.

1. MURDER—INDICTMENT.—The Penal Code and Code of Criminal Procedure have abrogated the common-law requirement that an indictment for murder should aver the part of the body upon which the mortal wound was inflicted.

2. SAME.—*Smith* v. *The State*, 43 Texas, 643, and *Nelson* v. *The State*, 1 Texas Ct. of App. 41, explained or overruled. *Williams* v. *The State*, 1 Texas Ct. of App. 465, distinguished and explained.

APPEAL from the District Court of Williamson. Tried below before the Hon. E. B. TURNER.

The indictment was found in Bell county, against Church Wilkerson and the appellant, jointly, for the murder of John Roach, by shooting, on March 6, 1874. Church Wilkerson was tried in Bell county and was acquitted, and the appellant obtained a change of venue to the county of Williamson.

The difficulty resulted from a dispute about a boundary-line between the deceased and the appellant. The deceased was in the act of fencing in the disputed area on the day of the killing, when the appellant and his brother, Church Wilkerson, came up, armed with guns and on horseback. According to the evidence of Church Wilkerson, who testified for the defense, they went there to settle the disputed line by agreement, if possible, and so informed the deceased, who replied, "It is a d—d pretty way to settle a line peaceably, and both of you armed." Angry words and menaces ensued until, according to Church Wilkerson, the deceased threw his right hand behind his back and under his coat, as though to draw a weapon; whereupon the appellant shot him in the head and face with both barrels of his gun, killing him instantly. The same witness stated that he had known the deceased for several years, and knew that he always carried a pistol.

W. M. Holt, the principal witness for the state, stated
that he and two other men were about 150 yards from the
deceased and the Wilkersons when the latter rode up ; that
deceased beckoned to witness and his companions, and said,
"Boys, come this way ;" that witness went towards the
parties and heard deceased say to the Wilkersons, "You
are armed and I have nothing, but I can whip either of you
in a fair fight," on which Church Wilkerson pulled off his
coat and laid down his gun, telling the deceased to try him ;
that deceased replied, "I'd be a pretty fool to fight you,
and your brother standing here armed with a double-barrel
gun," and then, turning to Alvin Wilkerson, the appellant,
said, "You d—d rascal, you came down here with your gun
cocked on me ;" whereupon the appellant said, "Yes,
G—d d—n you, and I'll cock it again," and instantly fired
one barrel at the deceased, who fell, and the appellant
advanced two or three steps and shot deceased again as he
lay on the ground.   This witness denied that deceased put
his hand behind him just before he was shot.

Three witnesses for the defense proved serious threats
against appellant, made by the deceased several days prior
to the homicide, and that they had been communicated to
the appellant.

The jury found the appellant guilty of murder in the
second degree, and assessed his punishment at five years"
hard labor in the penitentiary

*E. M. Fay*, and *Makemson & Fisher*, for the appellant.
We insist that the indictment is fatally defective in this :
that it fails to describe in what particular locality of the
body the mortal wound was inflicted.   It is true, as argued
by the attorney general, in his brief in this case, that it is.
unnecessary to describe the wound by its length, breadth,
and depth ; but it certainly does not follow from this propo-
sition that the pleader is not required to allege the particu-

lar locality of the wound. The court will bear in mind the indictment in this case does not describe the wound by length, breadth, or depth, nor does it state in what particular part of the body it was inflicted.

In the case of *Smith* v. *The State*, 43 Texas, 646, the supreme court of this state enunciated the rule that an indictment must state in what part of the body the injury was inflicted. While it may be true, as insisted by the attorney general, that this is a mere *obiter*, yet it does not necessarily follow, because it may be an *obiter* in one case, that it is not a sound rule of criminal law. In the case of *Williams* v. *The State*, 1 Texas Ct. of App. 465, the defendant was charged with murder " by inflicting in and upon the body of one M. one mortal wound of the depth of five inches and the breadth of half an inch." The defendant was refused bail on *habeas corpus*, and, on appeal, this court, after affirming the decision of the court below, use the following language in regard to the indictment: " We call the attention of the county attorney specially to the indictment in this case, and suggest a new one might perhaps obviate any objection to its sufficiency by setting out more particularly the portion of the body upon which the mortal wound was inflicted."

Also, in the case of *Nelson* v. *The State*, appeal from Bexar, 1 Texas Ct. of App. 41, this court say: " Though, in an indictment for murder, it is not necessary that the mortal wound should be described by its length, breadth, or depth, yet it has always been held that the indictment must state in what portion of the body the injury was inflicted ·which resulted in death."

Mr. Wharton, in his very excellent treatise on the Law of Homicide, section 824, says: " The count in the indictment must state the part of the body to which the violence was applied."

17

Again, he says, section 834 : "The indictment must show in what part of the body the wound is inflicted, but, if the wound be stated to be on the right side and it be proven on the left side, the variance will not be fatal."

In the prosecution of every offense known to our Code it must appear affirmatively from the face of the indictment that, admitting the allegations to be true, the defendant is guilty of some offense known to the law. It occurs to us that the only safe rule for the criminal pleader to follow is that he must state every fact necessary to be stated in order that it shall appear from the face of the indictment that the accused is charged with an offense known to the laws of this state. In this instance we think the pleader has failed to do this. The allegation, "one mortal wound in and upon the body of John Roach," does not comply with the requirements of the law. In testing the indictment the facts alleged, and not the conclusions, will be considered ; so that, leaving out the word *mortal*, how can this court, without being advised as to the depth, breadth, length, or locality of the wound, determine that the defendant is charged with the offense of which he stands convicted?

We think there is such a degree of uncertainty in the allegation, "one mortal wound in and upon the body of John Roach," that the court below should have arrested the judgment, and, having refused to do so, we think this error of itself sufficient to require a reversal of the case by this court.

*George McCormick*, Assistant Attorney General, for the State. The indictment in this case does not describe the portion of the body upon which the wound was inflicted. This question was not presented to the court below by motion to quash, but the point was made by counsel, after the trial, by motion in arrest of judgment. If the allega-

tion is a matter of form, it comes too late, for it should have been taken advantage of by a motion to quash. *Long* v. *The State*, 1 Texas Ct. of App. 466.

But the point I desire particularly to present to the court is this: Is it necessary, under our Code, to describe the particular portion of the body upon which the mortal wound is given, in drawing indictments for murder by wounding? Or, is it not a sufficient allegation in such cases to state only that the mortal wound was inflicted upon the body of the deceased, without any further description of its location?

Under the common law it was necessary, in indictments of this kind, to allege both the character and description of the wound, and particularly the portion of the body upon which it was given. Afterwards it was held that, although the nature, character, and size of the wound should be alleged, yet it was not necessary to prove the allegation. 2 Bishop's Cr. Proc., sec. 518.

And our own court has held that it was not necessary to prove these averments as to the description of the wound. *Smith* v. *The State*, 43 Texas, 646; *Williams* v. *The State*, 1 Texas Ct. of App. 465.

It appears from the English authorities that, until the year 1825, the requirement was absolute that the description of the wound must be given, and that it was not until a case arose where death had resulted from a *bruise* that the court decided otherwise; the judges making this decision giving as a reason that they had a right to consider whether common sense required a statement of these particulars, and as the statement, if introduced, need not be proved, they thought it unnecessary. This decision, then, may be said to have been made upon the ground that it was unnecessary to allege that which need not be proved.

The reason for the old rule originated in the then idea that the court should be informed of the size, shape, length, breadth, etc., of the wound, so as to enable them to see

whether it was mortal. May it not also be said that the reason for requiring an allegation of the spot upon the body where the wound is given was for the same purpose, and cannot it now be truthfully said that in neither case is the reason a good one? In both alike it is as fallacious as it is untrue and unreasonable ; for, from the very nature of things, it can no more appear from the location of the wound upon the body that it is necessarily mortal than it can from its length, breadth, or depth. The question in both cases is the same, and can only be arrived at from the effects of the wound, not its size nor its location.

And as the rule of the common law requiring a description of the wound was annihilated when the judges subjected it to the light of reason and common sense, so will the rule of the common law requiring a statement of the location of the wound be alike overruled when subjected to the same rule of reason.

I submit that, in cases of murder by wounding, it is not necessary to prove the allegation of location as made in the indictment. 2 Bishop's Cr. Law, sec. 526 ; Whart. on Hom., secs. 824, 834 ; 2 Hale, 186 ; Archb. Cr. Pl. 384 ; Whart. Cr. Law, sec. 1069.

The necessity for the construction of the Code upon which I insist is apparent. Our state is new, her people are not homogeneous ; her population is scattered and sparse ; her frontiers are extensive, and her neighbors are not friendly ; and such was the case when our Code was adopted, and the object and intent of its framers is too plainly seen to be misunderstood.

It was intended that our system should be plain, sensible, and simple ; not unwieldy, complex, and requiring at the hands of the citizen and officer anything that, from the very circumstances under which they lived, was impossible for them to perform.

Any other construction of the indictment under consider-

:ation than the one upon which I insist must be made upon the idea that it is necessary, before the criminal laws of the state can be enforced, that the officers charged with this duty should be educated in the rules of the common law, and familiar with all the technical niceties of pleading as practiced in old England.

With the views herein expressed of the objects and spirit of our Code, strengthened by a knowledge of the necessity of the construction as herein contended for, and in the light of the decisions of the courts of New York and Indiana, founded as they are upon the soundest principles of reason and common sense, I respectfully ask this court to review and overrule the *dictum*—for certainly it can be termed nothing else—given in the case of *Smith* v. *The State*, 43 Texas, 646, and, also, the opinion of the court in the case of *Williams* v. *The State*, 1 Texas Ct. of App. 465.

WHITE, J. The case presents plainly and fairly a question of pleading, in reference to an indictment for murder, which has never before been directly presented to, or authoritatively decided by, the courts of last resort in Texas. This question is : Is it necessary, in an indictment for murder, to locate by positive averment the particular portion of the body upon which the mortal wound was inflicted?

The allegation in the indictment is that the defendants, by discharging and shooting off certain shot-guns and pistols, "then and there feloniously, willfully, and of their malice aforethought, did strike, penetrate, and wound him, the said John Roach, giving to him, the said John Roach, then and there, with the leaden balls aforesaid, so as afore-said discharged and shot out of the shot-guns and pistols aforesaid, by the said Church Wilkerson and Alvin Wilkerson, upon the body of him, the said John Roach, one mortal wound, of which mortal wound the said John Roach then and there instantly died."

It is insisted that the indictment is fatally defective in this : that it fails to describe in what particular locality of the body the mortal wound was inflicted.

As preliminary to, and in elucidation of, this question it may not be inappropriate to quote certain portions of our Penal Code and Code of Criminal Procedure. In the very 1st Article of the 1st chapter of the Penal Code it is stated that " the design of enacting this Code is to define, in plain language, every offense against the laws of this state, and to affix to each offense its proper punishment." Pasc. Dig., Art. 1602.

" Art. 2. The object of punishment is to suppress crime and reform the offender." Pasc. Dig., Art. 1604.

" Art. 3. In order that the system of penal law in force in this state may be complete within itself, and that no system of foreign law, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, as a penal offense, unless the same is expressly defined and the penalty affixed by the written law of this state." Pasc. Dig., Art. 1605.

" Art. 4. The principles of the common law shall be the rule of construction when not in conflict with the Penal Code or Code of Criminal Procedure, or with some other written statute of the state." Pasc. Dig., Art. 1606.

" Art. 9. This Code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without any regard to the distinction usually made between the construction of penal laws and laws upon other subjects ; and no person shall be punished for an offense which is not made penal by the plain import of the words of a law." Pasc. Dig., Art. 1611.

If we turn to the Code of Criminal Procedure, we find the reasons for its adoption stated in the preamble, in these words :

"Whereas, it is the duty of every government to prescribe plain rules in reference to the prevention and prosecution of crime, by means of which the rights of citizens may be protected, the innocent acquitted, and the guilty brought to certain punishment, which rules ought to be definite and easy of comprehension, so that every officer may understand his duties, and every citizen his rights; therefore, 1st. The following Code is hereby established, and shall be called the Code of Criminal Procedure." Pasc. Dig., Art. 2468.

Article 24 provides that "the provisions of this Code shall be liberally construed, so as to attain the objects intended by the legislature—the prevention, suppression, and punishment of crime." Pasc. Dig., Art. 2491.

There are nine requisites to an indictment, the seventh being that "the offense must be set forth in plain and intelligible words." Pasc. Dig., Art. 2863.

It is further declared that "it is not necessary to state in an indictment anything which it is not necessary to prove." Pasc. Dig., Art. 2864.

And again: "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense." Pasc. Dig., Art. 2865.

Commenting upon the objects and purposes of their adoption, the Hon. Peter W. Gray, in *Martin* v. *The State*, says: "The adoption of the Codes was a legislative effort for reform and improvement in the administration of criminal law. That they have accomplished much to that purpose is well known to the court and old members of the legal profession. Similar improvements had been made in other states, and even in England, whence we derived the common law. It is remarkable that in that country there is less strictness in forms, and less adherence to technical niceties, than is now constantly insisted upon, and often

maintained, in our courts. Nor has it been found there, or in other states which have adopted similar reforms, that there is less real protection given to the just rights and liberties guaranteed to the citizen by the Constitution, while on the other hand the great ends of the administration of justice have been facilitated. In England, since the statutes of 44 & 45 Victoria, ch. 100, indictments for crimes have been much simplified. Even in an indictment for felonious homicide it is not necessary to set forth the manner in which, or the means by which, the death was caused." (Citing Cooley's Blackstone, book 4, p. 308, and notes.) *Martin* v. *The State*, 40 Texas, 19. See 2 Archb. Cr. Pl., 6th ed., 206, and note.

As seen above, our law declares that " it is not necessary to state anything in an indictment which it is not necessary to prove." Pasc. Dig., Art. 2864.

The English courts have had occasion to pass upon the very question we are called upon to decide in this case. We quote from the supreme court of California, in the case of *Steventon* v. *The People*. That court says : " In *Rex* v. *Mosley*, 2 British C. C. 102, a motion in arrest of judgment was made on the ground that the indictment contained no sufficient description of the wounds from the effect of which it was said the death ensued. Counsel contended that it was necessary to describe the particular parts of the body on which the wounds are alleged to be, and that the facts should, according to ancient forms, be so stated that you might place your finger on the part of the body where the wounds are described to be ; and that this was still requisite, though a conviction may take place on evidence varying from it. The case was reserved for argument before all the judges, and it was held that, ' as common sense did not require the statement of these particulars, and as the statements, if introduced, need not be proven, it was unnecessary.' This doctrine was reaffirmed in the case of *Rex* v.

*Tomlinson*, 25 Eng. Com. Law Rep. 442." *People* v. *Steventon*, 9 Cal. 273. See, also, *Turner's Case*, 1 Lew. C. C. 177.

It is admitted at common law this particularity in the description of the locality, and formerly even of the length, breadth, and depth, of the wound was held to be absolutely requisite to the validity of an indictment for murder. Most of the American states, in adopting the common law, adopted also the rules, forms, and precedents it prescribed for indictments; and in most of the states this particularity of description and location of the mortal wound is still held indispensable, though in none of the states is it now held, so far as we recollect, that the locality of the wound must be proven as laid in the indictment. 2 Bishop's Cr. Law, sec. 526; 2 Hale, 186; Archb. Cr. Pl. 384; Whart. on Hom., secs. 824–834; Whart. Cr. Law, sec. 1069.

In California, Indiana, and New York, however, a different rule prevails. We have already had occasion to quote from the case of *Steventon* v. *The People*, 9 Cal. 273. In *The People* v. *Judd*, 10 Cal. 313, the former decision was reaffirmed. In *The People* v. *King*, where the same question was discussed, the reasoning of the court is so applicable and appropriate to our own system that we make free to reproduce it here *in extenso*. Sanderson, C. J., says: "Our Criminal Code was designed to work the same change in pleading and practice in criminal actions which is wrought by the Civil Code in civil actions. Both are fruits of the same progressive spirit which in modern times has endeavored at least to do away with the mere forms and technicalities of the common law, which were productive of no good, and frequently brought the administration of justice into contempt by defeating its ends. Under the pretense of informing the defendant of the nature of the charge against which he was called upon to defend, it was necessary, at the ancient common law, to describe the means by

which the homicide was committed, and the nature and extent of the wound, and its precise locality; from which it necessarily followed that a trifling variance between the proof and the allegation frequently defeated a conviction, no matter how manifest the guilt of the defendant. It was a long time before legislators and judges discovered that this rule had nothing but the most flimsy pretext to support it. If the defendant is guilty, he stands in no need of information to be derived from a perusal of the indictment as to the means used by him in committing the act, or the manner in which it was done, for as to both his own knowledge is quite as reliable as any statement in the indictment. If he is not guilty, the information could not aid in the preparation of his defense. A disposition to relax much of this ancient strictness in criminal proceedings has manifested itself in modern practice, and in harmony therewith the legislature of this state has substituted, in place of the old, a new system of practice and pleading which retains all the elements of the former, so far as they are made necessary by a due regard to the substantial rights of a defendant, but discards all such elements as serve no good purpose, and only tend to embarrass and defeat the administration of justice." *The People* v. *King*, 27 Cal. 507.

And so, also, in the case of *Cordell* v. *The State*, the supreme court of Indiana say: "We admit the common law required the allegations in the indictment. *Dias* v. *The State*, 7 Blackf. 20. But in Archbold's Criminal Pleading, 10th ed., side-paging 408, even as to this it is said that in this and other instances there is a particularity required in an indictment for murder which it would be ridiculous to attempt to account for or justify, for the same strictness is not required as to the evidence necessary to support it. If, for instance, the wound be stated to be on the left side and proved to be on the right side, or alleged to be in one part of the body and proved to be in another,

the variance is immaterial, and for that reason the objection can now only be taken by demurrer. This shows that even at common law the allegation stood upon the same footing as the allegation as to the hand in which the weapon was held, the depth and size of the wound, etc., all of which are now held not to affect any substantial right of the defendant." *Cordell* v. *The State*, 22 Ind. 1. The following cases are cited by the court in support of the indictment: *Dukes* v. *The State*, 11 Ind. 557; *Reed* v. *The State*, 8 Ind. 200; *Conkhite* v. *The State*, 11 Ind. 307; *The State* v. *Farley*, 14 Ind. 23; *Malone* v. *The State*, 14 Ind. 220; *The State* v. *Murphy*, 21 Ind. 441. To which we add *Mitchell* v. *The State*, 23 Ind. 89; *Jones* v. *The State*, 35 Ind. 122.

In *Sanchez* v. *The People*, the court of appeals of New York say: "It is usual to state the particular part of the body upon which the violence producing the death was inflicted, and in some of the old authorities it is said that the charge or statement of the crime in the indictment should be so precise in this respect that, from such statement, you could lay your finger upon the particular spot. But this strictness has given way to a more sensible and practical rule. The object of an indictment is to give the party reasonable notice of the crime with which he is charged, in order that he may prepare his defense, and be protected against a second trial for the same offense. Neither of these objects are attained or approached by requiring specifications which need not be proved, and it is well settled that an allegation that the wound was inflicted on one part of the body is sustained by evidence showing that it was in another and different part. For example, a charge that the wound was made on the right side of the body is sustained by evidence that it was on the left side (1 Russ. on Cr., 5th Am. ed., 558–562, and authorities cited), and the same rule applies to the length and depth of

the wound. But, assuming the common-law rule to require the indictment to state the particular part of the body where the mortal wound was inflicted, the consideration that the public prosecutor is not obliged to prove that it was in the body as charged, and that such allegation is sustained by evidence that it was inflicted elsewhere on the body, proves that it is a matter of form so far as relates to the place upon the body where the wound was inflicted." *Sanchez* v. *The People*, 22 N. Y. 147.

We have drawn thus extensively upon these decisions because, as heretofore stated, the doctrine enunciated is different from that as held in most of the states of the Union, and as is laid down as the rule in most of our standard works on criminal law. It is true that Mr. Wharton, in his latest edition on Homicide, says that a charge that the wound was upon the body is a sufficient averment of location (Whart. on Hom., 2d ed., sec. 834), and, tested by this rule, the indictment in this case would be sufficient, because the allegation is that "upon the body of him, the said John Roach, one mortal wound, of which mortal wound he, the said John Roach, then and there instantly died."

We are of opinion that the rule, and the reasons for the same as held in California, Indiana, and New York, may well be held to apply in all its force to the statutes of our own state. Here, as we have seen, the law expressly provides that "it is not necessary to state in an indictment anything which it is not necessary to prove" (Art. 2864); and, as we have also seen, neither at common law, by statute, nor under the decisions of this or any of the other states, even when the wound is located, is it necessary to prove it as alleged.

But we have been cited by appellant's counsel to three decisions in this state in which a contrary rule is said to be laid down. Even if counsel were correct in this assertion, our convictions, upon mature consideration of the question,

would lead us to overrule these previous decisions, rather than blindly follow them from the simple fact that they were, or might be considered in the light of, *stare decisis.* No matter how long or closely followed a rule may have become, yet, whenever it is made plainly to appear that it is wrong in theory and practice, and is unsupported by reason or principle, it should no longer be considered of any binding force ; and the courts, looking to right rather than precedent, should never hesitate so to declare.

When, however, we examine the three cases alluded to, we will find that they should not be considered authority on this point because, in deciding either of those cases, the question involved in this case was not the question upon which those cases turned, or was essential to the decision rendered.

In *Smith* v. *The State*, 43 Texas, 643, the indictment charged that the defendant "made an assault on George Ballard, striking him *a blow on the head* with a large persimmon stick, a deadly weapon, inflicting a wound of which he died the next day," etc.   There the mortal wound was located by the allegation that the blow was on the head.   Inasmuch as the location of the wound was alleged, it was not necessary that the court should decide that "the indictment must state in what part of the body the injury was inflicted."

In the case of *Nelson* v. *The State*, 1 Texas Ct. of App. 41, the charge in the indictment was that the mortal wound was inflicted upon the left side of deceased. There the wound was located—the question not being as to the location, but whether or not the proof, showing that it was actually inflicted upon the right side instead of the left, supported the indictment.   It was not necessary in that case that the court should have decided "that the indictment should state in what part of the body the mortal wound was inflicted."   And in these two cases the language used in regard to this matter—if it could be at all considered with the main point decided, which we do not admit, since it

was not a question presented in the case—is simply *obiter dicta*.

In the case of *Williams* v. *The State*, 1 Texas Ct. of App. 465, which was an appeal on the refusal of bail upon an indictment for murder, the charge was that the death was caused "by inflicting in and upon the body of one M. one mortal wound of the depth of five inches and of the breadth of half an inch." In affirming the judgment of the lower court this court said : " We call the attention of the county attorney specially to the indictment in this case, and suggest a new one might perhaps obviate any objection to its sufficiency, by setting out more particularly the portion of the body upon which the mortal wound was inflicted." This was not deciding that the indictment was insufficient, but was simply a recommendation to obviate on the trial the necessity of having to decide the very question which we are called upon to decide in the case at bar.

Neither of these cases are, or should be, considered as authoritatively deciding the point raised. If they can in any manner be so considered, then we unhesitatingly say that, in the light of the authorities adduced, and under the plain dictates of common sense and reason as applied to the plain construction and intention of our statutes as quoted above, and in furtherance of justice and the proper, certain, and efficient administration of the law, they should, and on this point will, be hereafter considered by this court to be overruled.

We think the indictment in this case is good and sufficient as an indictment for murder. This disposes of the only question really involved in the case ; for the charge of the court was a most able and unexceptionable presentation of the law applicable to the facts, and the facts amply warrant and sustain the finding and verdict of the jury.

The judgment of the lower court is, therefore, affirmed.

*Affirmed.*