SAMUEL EDWARDS, PLAINTIFF IN ERROR, VS. THE
STATE OF FLORIDA, DEFENDANT IN ERROR.

EXCUSING JURORS—JUDGES DISCRETION—GENERAL OBJECTIONS TO
EVIDENCE—EXPERT EVIDENCE AS TO CAUSE OF DEATH IN HOMI-
CIDE.

1. Trial judges are very properly vested with judicial discretion in
the matter of excusing jurors from service as such in cases of
necessity, and no exercise of such discretion will be ground of
reversal on writ of error, where no abuse of the vested discre-
tion is shown.

2. Assignments of error predicated upon *general* objections to the
propounding of questions to witnesses, and to the admission
of evidence, will not be considered by the appellate court
where no *specific ground of objection appears from the
record to have been stated* or made in the trial court.

3. In cases of homicide it is best always to have the evidence of
medical experts, if they can be obtained, as to the fatal char-
acter of wounds; but where such evidence is not accessible,
non-experts may, after describing the wounds, give their
opinions as to whether such wounds caused the death, with
their reasons therefor; and if, from such evidence, the jury is
convinced, beyond a reasonable doubt, that the wounds thus
testified about did produce the death, it is sufficient to sus-
tain a conviction.

4. Where a wound from which death might ensue has been in-
flicted with murderous intent, and has been followed by death,
the burden of proof is upon the party inflicting the wound to
make it appear that the death did not result from such wound,
but from some other cause.

Writ of Error to the Circuit Court for Gadsden county.

The facts in the case are stated in the opinion.

*Liddon & Eagan* and *W. H. Ellis*, for Plaintiff in. Error.

*The Attorney-General*, for Defendant in Error.

(Judge Broome, of the Seventh Judicial Circuit, sat in the place of Mr. Justice Carter, who was disqualified).

TAYLOR, C. J.:

At the Spring term, 1897, of the Circuit Court for Gadsden county, the plaintiff in error was tried and convicted of murder in the first degree, and, on the recommendation of the jury to mercy, was sentenced to life imprisonment in the penitentiary. From this sentence he comes here by writ of error.

The errors assigned are as follows: 1st. The court erred in permitting the clerk of the court to place a file mark upon the indictment against the defendant *nunc pro tunc*, and that the record be amended so as to show that the indictment was returned against Samuel Edwards, and not Samuel Edward, and that the same was endorsed "a true bill," and signed by the foreman, viz: William H. Rankin. 2d. The court erred in holding that the venireman Henry Durr was disqualified to serve as a juror in said case. 3d. The court erred in holding that the venireman J. W. Johnson was disqualified to serve as a juror in said case. 4th. The court erred in holding that the venireman Y. J. Davis was exempt from serving as a juror in said

case. 5th. The court erred in holding that the venireman B. F. Dunaway was disqualified to serve as a juror in said case. 6th. The court erred in entertaining the opinion from the examination and demeaner of the venireman B. F. Dunaway that he was not unbiased and impartial in the case, and letting such opinion enter into his consideration of the disqualification of said juror without communicating the same to the defendant or his counsel. 7th. The court erred in overruling the objection of the defendant to the question asked the witness B. F. Owens as to whether or not from the general reputation of the deceased, Jerry N. Forehand, in the community in which he lived for truth and veracity he would have believed him on his death bed. 8th. The court erred in overruling the motion of the defendant for a new trial.

The first, second and fourth of these assignments are abandoned here by the briefs of counsel for the plaintiff in error.

The third, fifth and sixth of these assignments are predicated upon rulings of the court in empanelling the trial jury, holding that two veniremen examined on the *voir dire* were disqualified to sit as jurors. One of them was held to be disqualified on the ground that he held the office of postmaster. The other was held to be disqualified because he had been connected by marriage with the defendant, and because from his manner on the *voir dire* examination the judge deemed him to be biased. Whether the juror, occupying the position of postmaster, was disqualified or incompetent under our jury law to serve as a juror by reason of being postmaster, or not so disqualified, can make no difference in the propriety of the judge's ruling excusing him. The record shows that he occupied a po-

sition of public trust, that of postmaster, in the con-stant and prompt performance of whose duties as such the entire public was interested, and the judge, in the exercise of that sound judicial discretion with which he is very properly vested, had the right to excuse him from jury service, whether the law expressly exempted him from such service or not. Ellis vs. State, 25 Fla. 702, 6 South. Rep. 768. So in the case of the juror Dunaway. The record shows that he had been related by marriage to the defendant, and that his manner and demeanor on the *voir dire* examination led the judge to the conclusion that he did not stand unbiased towards the defendant. What his manner and demeanor was that so influenced the judge, the record does not disclose, but the presumption in favor of the correctness of official action must prevail in favor of the propriety of the judge's ruling, at least to the extent of sustaining his action as not being an abuse of his judicial discretion, in the absence of any showing to the contrary.

The seventh assignment of error arose as follows: The defendant introduced a witness who was asked upon the direct examination if he knew the deceased, (whose dying declaration admitted in evidence was the chief testimony implicating the defendant in the murder,) and if he knew the general reputation of the deceased for truth and veracity. The witness' answer to the last of these questions was: "I did to a certain extent." Then he was asked: "Was it good or bad?" His answer was: "It was good in some instances, and in some it was not; it was mixed." Upon the cross-examination of this witness the State Attorney propounded the following question: "You have said that you knew the general reputation of the deceased in the

community in which he lived for truth and veracity; from that general reputation that he bore would you have believed him on his death-bed?" To this question the defendant's counsel objected upon the general ground that it was improper, without any specification as to wherein lay its impropriety. The court overruled the objection and admitted the question, to which exception was taken. The witness answered that he "could not disbelieve any man's oath on his death bed." The form of the witness' answer was not objected to, nor was any effort made to strike it out. The well established rule here is that, when reviewing the action of the trial court in overruling *general* objections to the propounding of questions to witnesses and admissions of evidence, where no *specific ground of objection appears from the record to have been stated*, an appellate court must consider such *general* objections as vague and nugatory, and without weight. Carter vs. Bennett, 4 Fla. 283; Gladden vs. State, 12 Fla. 562, and authorities cited. Under this rule we can not consider the seventh assignment of error.

The eighth assignment of error involves the sufficiency of the evidence to support the conviction. No medical expert testified in the case as to whether the wounds inflicted by the defendant upon the deceased were the cause of his death. But the proof did show that the deceased was shot sometime after night while on horse-back traveling a public road, one wound being in the back of the head, the other in the right side, and that he died at about 12 o'clock the next day after receiving these wounds. A witness who was not a medical man testified that he examined these wounds, and did not think the one in the head caused the death, because the missiles producing it appeared to

have glanced the skull, but that he thought the wound in the right side was the one that produced death. The deceased in his dying declaration, as given by one witness, stated that the defendant had jabbed his pistol against his side and shot him, and that he was shot in the bowels. It is contended here in the briefs of counsel that this evidence was not sufficient to show beyond a reasonable doubt that the wounds were the cause of the death. That it should have been shown clearly by medical experts that the wounds inflicted were the cause of the death. With this contention the adjudged cases are not in accord. It is best always in such cases to have the evidence of medical experts, if they can be obtained, as to the fatal character of wounds; but where such evidence is not accessible non-experts may, after describing the wounds, give their opinions as to whether such wounds caused the death, with the reasons therefor, as was done in this case; and if, from such evidence, the jury is convinced beyond a reasonable doubt that the wounds thus testified about did produce the death, it is sufficient to sustain a conviction. Everett vs. State, 62 Ga. 65; Smith vs. State, 43 Tex. 643; Kerr's Law of Homicide, p. 528; 2 Bish. Crim. Pro., sec. 631. Besides this, the law is that when a wound from which death might ensue has been inflicted with murderous intent, and has been followed by death, the burden of proof is upon the party inflicting the wound to make it appear to the satisfaction of the jury that the death did not result from such wound, but from some other cause. State vs. Briscoe, 30 La. An. 433, and authorities therein cited. There was no attempt in this case on the defendant's part to show that the death of the deceased was produced by any other cause than the wounds by

him shown to have been inflicted. We think that the motive for the crime was also sufficiently shown by the proofs. We think that the proofs in the case sustains the conviction fully, and finding no errors in the record of the trial, the judgment of conviction is hereby affirmed.